The WASHINGTON UNIVERSITY, a cor-
poration, Appellant,

v.

AALCO WRECKING COMPANY, INC.,
a corporation, Respondent.

No. 55193.

Supreme Court of Missouri,
Division No. 2.

Nov. 13, 1972.

Motion for Rehearing or Transfer to Court
En Banc Denied Dec. 11, 1972.

Robins, Davis & Lyons, Lawrence Zelle, Dale I. Larson, Minneapolis, Minn., Hullverson, Richardson & Hullverson, St. Louis, for appellant.

Boyle, Priest, Elliott & Weakley, Edward D. Weakley, Howard Elliott, St. Louis, for respondent.

HENLEY, Judge.

This is an action for damages in the amount of $850,000 for the destruction of and damage to plaintiff's buildings by fire allegedly resulting from negligence of defendant. Trial to a jury resulted in a verdict and judgment for defendant. After an unavailing motion for new trial, plaintiff appealed. The appeal was properly pending in this court on January 1, 1972, the effective date of the August, 1970, amendment to Article V, § 3, Constitution of Missouri, V.A.M.S., and we retain jurisdiction to decide the case as required by § 31, ¶ 4, of the amendment.

The fire occurred in the early morning hours of August 4, 1965, and involved buildings located in a two-block area bordered on the north by Spruce street, on the south by Poplar, on the east ·by Seventh street and on the west by Ninth. Most of the buildings within this area were constructed in the 1890's as an integrated railway warehouse complex known generally as Cupples Station. The complex was divided into two groups of buildings by a railroad yard consisting of several sets of tracks of the Terminal Railroad Association. These tracks exited from a tunnel and entered the area from the north at Spruce and what would be Eighth street extended and spread out into several sidings as they ran in a southwesterly direction. Six buildings were in a group on the west side of the railroad yard and thirteen in a group on the east side. The two groups of buildings were connected by two covered bridges (of steel frame and wood construction) above the tracks at about the second floor level of the buildings. Plaintiff owned the land and the six buildings on the west side of the yard; most of plaintiff's buildings were occupied by tenants. The land and buildings on the east side of the yard were taken by the State Highway Commission sometime prior to April, 1965, for use in connection with the construction of a highway through the near-downtown area close by what is now Busch Stadium.

In that month, defendant, under a contract with the Highway Commission, began demolition of all buildings and other improvements on the east side of the yard,

except the two bridges. The method of demolition was for the "wreckers" to knock out one brick wall to expose the outermost supporting columns of the building; then a "headache ball" was used to knock out the columns at the bottom; when the last supporting column was thus removed, the area formerly supported by the removed columns would " * * * shear from the top of the building and fall to the ground." At the time of the fire, nine of the eastside buildings had been completely demolished; the four remaining were those closest to the tracks. Three of these were still intact and the covered bridges were also still intact with the east ends connected to the two most southerly of the remaining four buildings. Demolition work had commenced on the third building north of Poplar " * * * and had proceeded to the point where only the westernmost bay and brick wall remained standing."

Prior to the beginning of demolition the buildings on both sides of the railroad yard were equipped with fire deterrent sprinkler systems and an electrical system which would warn when the sprinkler system had been activated by fire. The method of demolition would not permit continued use of the sprinkler system, hence the system was deactivated in the buildings on the east side of the yard, but was maintained and operable in plaintiff's buildings. A portion of the electrical alarm system, monitored by Potter Electric Alarm Company, continued to be maintained after demolition was begun and on the night of the fire was in operation in plaintiff's buildings and from plaintiff's buildings across the northernmost bridge over the tracks to the second and then north to the third building north of Poplar street on the east side of the railroad yard. At about 2:10 a. m. on August 4, Potter's control panel recorded a "ground" signal, indicating that the insulation on its wire had been destroyed and the bare wire was touching a pipe or other conductor which ran to the ground. The evidence does not show the location of the point at which the wire was grounded, but it appears to be agreed that the fire caused the "ground." It also appears to be agreed that, although the sprinkler and alarm systems in plaintiff's buildings were operable, there was no alarm received that the sprinkler system in the buildings had been activated by fire, and that this was the result of the "ground" of the alarm signal wire.

Plaintiff's theory of recovery is that the fire started in the area of the buildings being demolished by defendant and, as a result of negligence of the defendant, was permitted to spread to plaintiff's buildings causing them to burn. The negligence pleaded by plaintiff is, in the alternative, (1) that defendant failed " * * * to perform its work in accordance with acceptable standards of the demolition and wrecking industry * * *" in that, inter alia, it failed " * * * to provide a watchman during the hours when actual wrecking was not being accomplished * * *", as a result of which there was such delay in discovery and reporting of the fire as to permit it to grow and spread to plaintiff's buildings; or, (2) that defendant violated an ordinance of the City of St. Louis which required, inter alia, that during the hours when demolition work was not in progress it secure its buildings against entry by transients or vandals, but if security is not possible, it provide a watchman.[1]

It is agreed that defendant did not provide a watchman during the hours when actual demolition work was in progress.

Plaintiff contends that the evidence is that on the night of the fire the buildings were not secured against transients or vandals, that it was not possible to so secure

---

1. Subdivision 9 of § 2116.2, of Article I, Building Code of the City of St. Louis provides that buildings to be razed of the size of those involved in this case " * * shall be kept secure against entry of transients or vandals. If security is not possible, watchman shall be provided during the hours wrecking is not being accomplished."

them, and, since defendant did not provide a watchman, it violated the ordinance and its violation constituted negligence as a matter of law; that it tendered and the court refused to give its instruction A [2] which would have submitted the case on the theory that the violation was negligence per se and did not require a finding of negligence by the jury; that the court erred in refusing to give this instruction.

∎ Defendant's immediate response to this point is, by way of argument, that plaintiff " * * * chose to proceed on the theory of common law negligence * * * " by its verdict directing instruction No. 2,[3] given by the court, and in discussions with court and counsel regarding the instructions and how the case was to be argued, waived any right it may have had to claim and convict the court of error for its refusal of instruction A. Plaintiff's proffer of instruction 2 was not by "choice"; it was tendered only after the court had refused to give its first choice, instruction A. We have reviewed the record of the discussions between counsel and the court regarding the instructions and arguments to which defendant refers and do not agree with the conclusions defendant draws. We conclude that plaintiff did not waive or abandon its position that it was entitled to have the court give instruction A.

Defendant contends the court did not err in refusing the instruction, because (1) there is no evidence to support a finding of a violation of the ordinance and no evidence showing a causal relation between the alleged violation and the damage suffered; and, (2) the instruction was erroneous in that (a) it failed to require a finding that security of the buildings was not possible, and (b) it failed to require a finding that plaintiff's damage was the proximate result of the alleged ordinance violation. Defendant argues that plaintiff's statement that the evidence is that the buildings were not secured and that it was not possible to secure them is completely inaccurate. In this connection, defendant argues further that the uncontradicted evidence is that not only was it possible to secure the buildings but that they were in fact secured against entry by transients or vandals.

The evidence on security is conflicting. There is substantial evidence that would support a finding: (1) either that it was possible to secure or that it was not possible; (2) either that the buildings were secured or that they were not.

In Downing v. Dixon, Mo., 313 S.W.2d 644, 650, the court said: "It has been stated many times that the violation of * * * [an] ordinance is negligence per se * * * ; but it is also well settled that

2. " 'Your verdict must be for the plaintiff if you believe:
First, a fire started in the area being demolished by defendant and spread to adjacent property including that of the plaintiff, and
Second, the buildings being demolished by defendant were not secured against transients or vandals and defendant provided no watchman while the demolition work was not in progress, and
Third, as a direct result of such conduct plaintiff sustained damage.' "
"Not in M.A.I."

3. " 'Your verdict must be for the plaintiff if you believe:
First, a fire started in the area being demolished by defendant and spread to property of plaintiff, and

Second, a very substantial danger existed that if a fire so started it would spread to adjacent property unless timely discovered and reported, and
Third, defendant knew or should have known of said danger and in order to timely discover a fire starting on premises being demolished by defendant that it should have employed a watchman during hours in which work was not being conducted on the premises, and
Fourth, defendant's failure to employ a watchman was negligence, and
Fifth, as a direct result of such negligence plaintiff sustained damage.' "
"Not in M.A.I."

the violation must be shown to have been the proximate cause of the injury." See also: Rice v. Allen, Mo., 309 S.W.2d 629, 631, and cases there cited.

Did the court err in refusing to give plaintiff's instruction A? As defendant states, the instruction did not require a finding that security of the buildings was "not possible." Defendant asserts that the jury must find as a fact that security was not possible in order to find violation of the ordinance; in other words, that the instruction has failed to require a finding of fact essential to plaintiff's theory, one without which there can be no violation of the ordinance and, therefore, no negligence as a matter of law. Gathright v. Pendegraft, Mo., 433 S.W.2d 299, 311 [15]; Jones v. Kansas City, Mo., 243 S.W.2d 318, 321 [2].

■ We are inclined to the view and hold that a finding that "security was not possible" is not essential to a finding that the ordinance had been violated. We understand the ordinance to require that a building be secured against entry by transients or vandals, those who increase the hazard of fire in unattended buildings being demolished, and that this security be accomplished by either one of two methods: (1) by closing all outside openings, or (2) by providing a watchman. The effect of defendant's contention would be an interpretation that where security is possible a watchman is not required although the buildings have not been secured. We consider this interpretation contrary to the plain and simple purpose of the ordinance.

It is obvious that there is no merit to defendant's contention that another reason for refusal of instruction A is that it was erroneous in that it failed to require a finding that defendant's failure to provide a watchman was the proximate cause of plaintiff's damage. The third numbered paragraph of the instruction requires a finding that plaintiff's damage was the direct result of defendant's conduct described in the second paragraph.

As to the challenge of the submission to the jury of the question whether there was a causal relation between the ordinance violation and the damage, defendant says that the record is " * * * devoid of any evidence tending to prove that had [defendant] employed a watchman the damage would not have occurred." In other words, defendant says there is no substantial evidence to support a finding that the failure to provide a watchman was the proximate cause of plaintiff's damage, that it is highly speculative whether a watchman could have seen the fire, reported it to the fire department, and the latter effectively respond, all in time to prevent its spread to plaintiff's buildings.

■ While the rule is that there must be a causal connection between negligence and the damage, that had defendant provided a watchman the fire would not have spread to plaintiff's damage, Larsen v. Webb, 332 Mo. 370, 58 S.W.2d 967, 970; Downing v. Dixon, supra, it is not required that the causal connection be established by direct evidence. It may be established by proof of facts and circumstances from which the connection reasonably may be inferred. Steele v. Woods, Mo., 327 S.W.2d 187, 195 [7, 8]; Leek v. Dillard, Mo. App., 304 S.W.2d 60, 65 [10].

■ Plaintiff asserts that the causal connection may be inferred from these facts and circumstances: that a demolition site is recognized by fire fighting experts as highly susceptible to fires; that the fire was first discovered and reported some twenty minutes or more after the Potter alarm was "grounded" by the fire; that had the fire been reported "fifteen minutes earlier, there is no question but what this building would have been—the buildings over there [plaintiff's buildings on the west side of the tracks] would have been saved." We cannot say as a matter of law that in these circumstances a watchman would not have served the useful purpose of timely discovering and reporting the fire before it spread to plaintiff's buildings

and grew to five alarm proportions. We hold that the facts and circumstances in this case are sufficient to present the question of causal connection to the jury. The court erred in refusing to give plaintiff's instruction A and for that reason the case must be reversed and remanded for a new trial.

Of the two remaining points briefed by plaintiff the first is that the court erred (1) in overruling its objection to and motion to strike the testimony of defendant's witness O'Toole as to the fair value of plaintiff's property before and after the fire; and (2) in refusing to give its proffered instruction withdrawing this evidence from the jury.

■ The instruction would have told the jury that they were not to consider this witness' testimony " * * * as to the highest and best use of plaintiff's land and his opinion, based thereon, that the plaintiff's buildings were worthless immediately before the fire * * *." The court sustained plaintiff's objection to the witness stating his opinion as to the highest and best use of the land and no evidence was presented on that question. Plaintiff readily admits that its objection was sustained, but, it says, this witness nevertheless improperly based his opinion that the buildings were of "no value" on the improper standard of "highest and best use" for the land. Plaintiff also asserts that its motion to strike the witness' testimony should have been sustained and the withdrawal instruction given, because the testimony was based on the value of the land *and* buildings, whereas it should have been based on the value of the buildings alone. In support of its argument that the before and after value should be based on the value of the buildings alone, plaintiff cites Matthews v. Missouri Pacific Railway Co., 142 Mo. 645, 44 S.W. 802, 807, and Rosen v.

Kroger Grocery & Baking Co., Mo.App., 5 S.W.2d 649, 652. The Matthews and Rosen cases state the rule to be that the measure of damages for the loss of a building by fire is the value of the building at the time of its destruction. The Matthews case adds to this the observation that " * * * the difference between the value of the real estate [land and building] before and its value after the injury would not generally afford a fair rule for measuring the damages * * *; [i]f the building destroyed, although a part of the realty, has an ascertainable value * * * no fairer rule for ascertaining just compensation for its loss * * *" can be found than to determine its value, separate from the land, at the time it was destroyed. We find from our review of the record that although witness O'Toole, in explaining his several methods of appraisal and the manner in which he arrived at the value, did refer to the values of land and buildings together and separately, his opinion that the buildings had no value immediately before the fire was in fact arrived at by a method not inconsistent with the above rule. The court did not err in overruling plaintiff's objection or its motion to strike; nor did it err in refusing the withdrawal instruction.

■ Plaintiff's last point is that the court erred in refusing to admit in evidence subdivision 4 of § 2116.2 of the St. Louis Building Code [4] and in refusing its evidence of the administrative construction of this section. The uncontradicted evidence is that the water supply to the sprinkler system in the buildings to be demolished had been disconnected by the city before demolition began and that the method of demolition approved for this project made inapplicable the provisions of this subdivision, which obviously applies only to the floor by floor demolition method. In

4. " 'All buildings equipped with automatic sprinkler protection and standpipe systems shall be kept in operating condition on every floor immediately below the point of demolition and shall be capped only as each floor is demolished. During cold weather below 32 degrees Fahrenheit, the sprinkler system shall be converted to a dry system.'"

these circumstances refusal of the admission of this subdivision in evidence could not have been prejudicial to plaintiff. For the reason that there was no error in refusing to admit the subdivision and for the further reason that the ordinance is not ambiguous or susceptible of different constructions, we perceive no error in the court's refusal of evidence of its administrative interpretation by city officials. State ex rel. Bell, State Treasurer, v. Phillips Petroleum Co., 349 Mo. 360, 160 S.W. 2d 764, 769.

The judgment is reversed and the cause is remanded.

MORGAN, P. J., DONNELLY, J., and DIXON, Special Judge, concur.