C. Tom FOSTER, Fostaire Harbor, Inc., & Aviation General Insurance Co., Plaintiffs-Appellants,

v.

BI–STATE DEVELOPMENT AGENCY, Defendant-Respondent.

No. 45895.

Missouri Court of Appeals, Eastern District, Division Five.

Jan. 17, 1984.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 29, 1984.

Application to Transfer Denied May 15, 1984.

Lusser, Hughes & Lusser, Rene E. Lusser, St. Louis, for plaintiffs-appellants.

Joseph A. Murphy, St. Louis, for defendant-respondent.

RONALD M. BELT, Special Judge.

Plaintiffs appeal from a judgment in favor of Bi-State Development Agency. We affirm.

This case had its genesis in an August 13, 1978 fire which totally destroyed aircraft Hangar IV owned by Bi-State and located at the Bi-State Parks Airport in Cahokia, Illinois. Fostaire, Inc. leased a portion of that hangar.

Fostaire's last employee left the hangar at 9:45 p.m. on August 12. Fostaire kept a vicious attack dog inside a portion of the premises it leased and allowed the dog to roam freely during hours that employees were not present. The dog could only be approached safely by four employees. At the time the last employee left on August 12, the dog was unleashed and all doors shut. In addition to this protection, under the terms of Fostaire's lease, Bi-State was to provide night security service for the premises. Bi-State contracted with Whelan Security Co. and Sentinel Security Services Inc. to provide a guard for the airport. The guard's duties included protecting several other buildings besides Hangar IV. The guard's instructions were to make rounds once an hour, but otherwise he was to remain at Hangar I, located a quarter of a mile from Hangar IV. He was to be watchful for fires, unauthorized personnel, vandals and was to check any open doors for intruders. On the evening of August 12, the guard was to report for duty at 11:00 p.m. but failed to appear.

At 12:20 a.m., a Cahokia deputy marshal on patrol approached Hangar IV and observed the west hangar door open approximately two feet. He saw no one nor any vehicles parked in the vicinity. From his patrol car, the marshal looked inside the hangar and saw no one nor any sign of fire. He heard no barking dog. He left and continued his rounds.

At approximately 12:56 a.m., the fire was first discovered. It "had been in progress

for probably ten to fifteen minutes," and "smoke was billowing a thousand feet into the air." There were 13 helicopters in the hangar which contained over 1000 gallons of jet aviation fuel in their gas tanks combined. "Once the first fuel tank erupted ... there was sufficient fuel to just go." The hangar was constructed in part of plywood and wooden beams. It had a freshly tarred roof. The Cahokia volunteer fire department had considerable difficulty in battling the fire and never brought the fire under control. The fire extinguished itself only when the hangar was consumed. An autopsy on the remains of the dog found after the fire established it died of smoke inhalation. There was no evidence of foul play in its death.

The fire caused the total destruction of plaintiffs' property located in the hangar. Plaintiff Tom C. Foster owned the helicopters valued at $943,500.00 destroyed in the fire. Plaintiff Aviation General Insurance Company provided insurance coverage of $381,500.00 on the helicopters which was paid to Foster in exchange for subrogation rights. Property of Fostaire, Inc. destroyed in the fire consisted of furniture, shop equipment, tools, and an extensive inventory, all of which was valued at $885,925.00.

Plaintiffs theorized the fire was caused either by defective wiring or arson set by an intruder. On the former point, plaintiffs presented evidence that a prior tenant had observed electrical arcing in the rafters of the northwest quadrant of the hangar caused by a defective circuit. The previous tenant turned the switch controlling this circuit to the off position and labeled it "do not use." While the switch was in this position, the electrical wires were not energized. This was the situation as it existed at the time of the fire in 1978. Plaintiff presented no expert witnesses.

Defendant theorized that the fire was caused either by arson or by the ignition of gasoline fumes from an uncapped 55 gallon drum by a spark from an air compressor.

Plaintiffs submitted the case to the jury by three separate verdict-directing instructions, each of which submitted the same alternative theories of negligence:

1. That Bi-State on the night of August 12–13 failed to provide a security guard to inspect the doors of Hangar IV and to find them to be unlocked and open and to then inspect the interior of the hangar and find any intruders therein; or

2. That Bi-State failed to provide a security guard who would have been watchful for fire on his patrol, or

3. That Bi-State knew or by using ordinary care could have known of a faulty electrical wiring around the fuse panel boxes located in the northwest area of Hangar IV which caused that area of the hangar to be unsafe.

The jury found in favor of the defendant on all issues. Plaintiffs raise nine points of error which they assert entitle them to a new trial. Eight points relate to instructions or admission of evidence of the defendant. The other alleges that the trial court erred in failing to grant a new trial because Bi-State judicially admitted negligence which proximately caused the fire. Defendant denies any judicial admission and contends the judgment should be affirmed because plaintiffs failed to make a submissible case.

The pleading alleged to be a judicial admission was defendant's second amended third party petition directed to Whelan Security Company and Sentinel Security Services, Inc., who are not parties to this appeal. Paragraph 9 of that petition reads:

The alleged damage suffered by Plaintiff was caused by the negligent acts or omissions of the defendants Whelan Security Company and Sentinel Security Services, Inc., and not by the sole negligence of Bi-State Development Agency or any other acts or omissions on its part.

To state a cause of action against the third party defendants for indemnification, defendant was necessarily required to plead their negligence. The allegations are not facts, but legal conclusions. Therefore, they do not amount to admissions. *Wors v.*

*Glasgow Village Supermarket, Inc.,* 460 S.W.2d 583, 590 (Mo.1970); *Macheca v. Fowler,* 412 S.W.2d 462, 465 (Mo.1967). Plaintiffs direct the court's attention to *Huber v. Western & Southern Life Insurance Co.,* 341 S.W.2d 297 (Mo.App.1960). *Huber* is not applicable. In that case, the admission was an affirmative fact, not a legal conclusion and was made in plaintiff's petition against defendant, not in a third party pleading. We find no merit to this point.

We now take up defendant's contention that plaintiffs failed to make a submissible case. The parties have stipulated that the substantive law of the State of Illinois applies. Under Illinois law, there must be proof of both negligence and proximate causation of an injury to impose liability on a tortfeasor for damages. *Kincl v. Hycel, Inc.,* 56 Ill.App.3d 772, 14 Ill.Dec. 374, 385, 372 N.E.2d 385, 396 (1977). The proximate cause of an injury is a cause which produces the injury and without which the result would not have occurred. *Kincl,* 14 Ill.Dec. at 385, 372 N.E.2d at 396; *Chapman v. Baltimore & Ohio Ry Co.,* 340 Ill.App. 475, 92 N.E.2d 466, 471 (1950). Liability cannot be based upon speculation, conjecture or surmise. *Illinois Bell Telephone Co. v. Purex Corp., Ltd.,* 90 Ill. App.3d 690, 45 Ill.Dec. 773, 779, 413 N.E.2d 106, 112 (1980); *Publication Corp. v. Chicago River & Indiana Ry Co.,* 49 Ill. App.3d 508, 7 Ill.Dec. 362, 364 N.E.2d 523, 526 (1977).

With these established principles in mind, we have carefully examined the entire record in the light most favorable to plaintiffs, and conclude that plaintiffs failed to establish defendant's acts were the proximate cause of plaintiffs' damages and consequently, failed to make a submissible case. First, we examine plaintiffs' claim that Bi-State's maintenance of faulty electrical wiring proximately caused their damages. To prevail on their claim, plaintiffs bore the burden of proving the faulty electrical wiring caused the fire. While plaintiffs presented evidence that there was a defective electrical circuit in the hangar, plaintiffs presented no evidence, expert or otherwise, that this was in any-

way related to the cause of the fire. Inasmuch as the jury would have been allowed to resort to conjecture and speculation as to whether defendant's acts caused the fire, plaintiffs failed to make a submissible case on this claim.

Next, we examine the evidence that defendant's failure to provide a guard who would have been watchful for fires the evening of August 12–13 proximately caused plaintiffs' damages. Our research has not disclosed any Illinois case in which a similar claim was made, however, we have found a Missouri case which is instructive. In *Washington University v. Aalco Wrecking Co., Inc.,* 487 S.W.2d 487 (Mo.1972), plaintiff sued defendant for damages sustained in a fire because of defendant's failure to provide a guard for buildings it was demolishing. A city ordinance required defendant to have a guard. A fire started in these buildings and spread to adjacent property belonging to plaintiff. The Missouri Supreme Court held that a causal connection between defendant's negligence in failing to provide a watchman and the spread of the fire to plaintiff's property could be established either by direct evidence or by circumstantial evidence. In that case, the facts and circumstances established that:

> "[T]he fire was first discovered and reported some twenty minutes or more after the Potter alarm was 'grounded' by the fire; *that had the fire been reported 'fifteen minutes earlier, there is no question but what this building would have been—the buildings over there [plaintiff's buildings on the west side of the tracks] would have been saved.'*"

We cannot say as a matter of law that in these circumstances a watchman would not have served the useful purpose of timely discovery and reporting the fire before it spread to plaintiff's building and grew to five alarm proportions. We hold that the facts and circumstances in this case are sufficient to present the question of causal connection to the jury. (emphasis added)

487 S.W.2d at 491–92.

Under Illinois law, proximate cause can be established by circumstantial evi-

dence. The circumstantial evidence must reasonably permit the inference of cause and effect. *Illinois Bell Telephone Co. v. Purex Corp., Ltd.*, 90 Ill.App.3d 690, 45 Ill.Dec. 773, 778, 413 N.E.2d 106, 111 (1980). We find *Washington University* is consistent with Illinois law. In this case, it is conceded that defendant breached its duty to provide a guard as in *Washington University*. The evidence established that the fire was first discovered after it "had been in progress for ten to fifteen minutes," and that in general early warning to the fire department is an advantage in extinguishing the control of a fire. The plaintiffs assert therefore, that the jury could reasonably conclude that the fire would not have gone out of control if a guard had been present discovering it at the outset.[1]

However, in the case under review, the circumstantial evidence does not reasonably permit the inference of cause and effect. Unlike the plaintiffs' building in *Washington University*, the building containing plaintiffs' property here was on fire at the outset and we cannot say that there is no question but this building and its contents would have been saved. Plaintiffs presented *no* evidence, expert or otherwise, that any portion of the hangar or its contents would have been saved if the fire department was notified at the outset. *See* e.g. *Thompson Missouri Auto Sales, Inc. v. Southwestern Bell Telephone Co.*, 624 S.W.2d 56, 57 (Mo.App.1981). The hangar was filled with inflammable material and the volunteer fire department had considerable difficulty in combatting the fire. The jury could only have speculated and conjectured on the evidence plaintiffs presented that earlier reporting of the fire would have made a difference.

■ Finally, we examine the evidence that the failure of the guard to inspect the hangar doors and discover an intruder proximately caused plaintiffs' damages.

The evidence is scanty that an intruder set the fire. The fire marshal testified he thought the fire was deliberately set principally because he eliminated all other reasons. There was no evidence an intruder was ever seen in the hangar or leaving it, let alone the length of time he was in there. The lone guard at the airport was stationed a quarter mile from Hangar IV and had responsibility for watching the entire airport, including several other buildings besides Hangar IV. It would have required considerable speculation and conjecture for the jury to conclude that a guard would have detected an intruder in Hangar IV on his hourly rounds in time to have prevented the fire.

Finding that defendant did not judicially admit a breach of duty to plaintiffs and that plaintiffs failed to make a submissible case, all other points regarding instructions and admission of defendant's evidence are moot.

Affirmed.

REINHARD, P.J., and CRANDALL, J., concur.

---

1. Plaintiffs make no contention that if the guard had been present he could have put out the fire. The guards were specifically instructed not to attempt to extinguish a fire but to report it immediately to the fire department.