COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS




VON RATSAVONG AND FONG
SOUPHANKHAYSY,

                            Appellants,

v.


BOUNPONE MENEVILAY AND
SYPANOME MENEVILAY,

                            Appellees.

§
 
§
 
§
 
§
 
§
 
 § 


No. 08-05-00044-CV

Appeal from the

68th District Court 

of Dallas County, Texas 

(TC# DV-0209543-C) 





O P I N I O N

           This is an appeal from a breach of an alleged oral contract to sell real property. 
Appellants, Von Ratsavong and Fong Souphankhaysy, appeal a judgment awarding title
to property located at 610 Neomi Street, Dallas, Texas to Appellees, Bounpone
Menevilay and Sypanome Menevilay. On appeal, Appellants raise fifteen issues for
review.
I. FACTUAL AND PROCEDURAL BACKGROUND
           On October 8, 2002, Appellees filed a lawsuit against Appellants in which they
alleged that on or about April of 1994, they entered into an agreement with the Appellants
for the purchase of the property located at 611 Neomi Street in Dallas, Texas. At the
time, the Appellees did not have the credit to purchase the house, but the agreement
entered into allowed Appellees to borrow Appellants’ credit to purchase the home. 
According to the Appellees, terms of the agreement were as follows: Appellees were to
pay the note in the principal amount of $12,500 executed by the Appellants for payment
of the house and premises. Upon payment of the total amount, the understanding was that
Appellants would execute a general warranty deed conveying the title to the property to
the Appellees. As agreed upon, the Appellees paid a $2,000 down payment. At the time
the agreement was entered into, the property was in poor condition and had been
purchased “as is” with the understanding that the Appellees would complete the necessary
repairs. Appellees moved into the property and began making repairs and improvements
to the property. By the time the lawsuit was initiated, the Appellees had paid in full the
debt and had made repairs in the home of an estimated cost of $28,000. The Appellants
filed their original answer asserting a general denial to the allegations and asserting the
following affirmative defenses: estoppel, waiver, lack of consideration, failure of
consideration, lack of clean hands by plaintiffs, fraud, the statute of frauds, applicable
statute of limitations, latches, and illegality.
           On December 14 and 15, 2004, the trial court held a hearing. At the hearing,
Bounpone Menevilay testified that he had known the Appellants for over thirty years and
that they had been good friends, dating back to when they lived in Laos. He testified that
in July of 1993, while he was living in California, Ratsavong visited their home; during
his visit, he indicated that there was a house next to his in Texas, and that if Menevilay
was interested in buying, Ratsavong would allow him to use his credit to do so. At the
time, Menevilay did not have the necessary credit to purchase a house, but it is customary
in the Laotian culture for friends to lend each other their credit for the purchase of homes
and vehicles; it was customary to not sign written contracts for such agreements. 
Ratsavong indicated to Menevilay that the house was being sold for $14,500 and that
Menevilay would need to give him $2,000 down payment and that he would take care of
everything else. According to Menevilay, Ratsavong entered into a contract for the
purchase of the home, but the understanding was that Menevilay would make the
payments and that the house was really his.
           Menevilay testified that the house was not in good condition and that it needed
many repairs. When he bought the house, he indicated the bathroom was not in a usable
condition. Menevilay testified that he repaired the bathroom, painted the exterior and
interior of the house, he constructed a garage, improved the sidewalk and added a
concrete driveway to the garage, he replaced a door and windows, and he added a utility
room for the washer and dryer. He paid for all the repairs and completed most of the
work himself with the help of his wife. After a repair was completed, Ratsavong would
often come over to see the improvement and stay for dinner to celebrate the
accomplishment. Menevilay testified that he would talk to Ratsavong about some of the
repairs because they were friends, and that he did not get a building permit for any of the
improvements.
           In addition to making these repairs, he testified that he made the mortgage
payments, paid the insurance on the home, and the property taxes for the entire time he
was living at the house, up to the point where litigation over the title was considered. 
Once he finished paying the mortgage on the house, Ratsavong refused to transfer the
deed to the Appellees. Rather, on September 27, 2002, he received a Notice to Vacate
and Notice of Termination of Tenancy at Will from Ratsavong’s attorney. At no point in
time did Appellees believe they were renting the home. Menevilay indicated that if that
were the case, he would not have done any improvements to the house. He indicated that
in the previous properties he had rented, he had never made any improvements.
           During cross-examination, Menevilay indicated that in the past, he had signed a
purchase contract for a mobile home, and rental leases for several properties he had
rented. When asked if he found it strange that no contract was signed for the purchase of
the home on 610 Neomi Street, he indicated that he did not think that Ratsavong would
take the house away from him because they were good friends.
           Mrs. Menevilay’s testimony reiterated much of what Menevilay indicated in his
testimony. She indicated that Ratsavong had approached them about buying the house
using his credit in July of 1993. She indicated that Ratsavong had mentioned that he did
not want to be driving long distances to visit them in California, and that this house was
just next door to his home. She testified that Ratsavong asked for a $2,000 down
payment; however, she never saw her husband actually give Ratsavong the money. She
also indicated that much of the improvements on the home were done by her and her
husband and that these occurred as soon as they move in because the house was “ugly.”
           Ratsavong testified at trial as well. He indicated that he purchased the home in
question for his children. The deed to the home is under his name and his wife’s name,
Fong Souphankhaysy. He indicated that he never told the Appellees anything about
lending them his credit to purchase the house. He further denied having any conversation
regarding the home in July of 1993 with the Appellees. He had gone to California to visit
family and the only reason he visited with the Appellees was because his car broke down. 
He pointed out that he purchased the house on April 25, 1994, after the 1993 visit. In
explaining how Appellees came to live in his home, Ratsavong testified that one day, he
saw Menevilay parked outside the house on 610 Neomi Street. He did not know where
the Appellees were living at the time or how they got to his house. At that point,
Ratsavong testified that he asked Menevilay if he wanted to rent the house and indicated
to him that it was in poor condition and that he would be responsible for any 
improvements and repairs. The rent was set at $258, plus taxes and insurance. His
understanding of this agreement was that it was a rental contract. He never told
Menevilay that after the mortgage was paid off, he would transfer the deed to the
Appellees.
           Ratsavong further indicated that Menevilay had completed improvements on the
house and that only sometimes would Menevilay ask for his permission to make the
improvements. He denied having received $2,000 from the Appellees as a down payment
on the home. He testified that he and his wife paid that money by selling some of her
jewelry. Mrs. Souphankhaysy also testified that the money for the down payment came
from selling her jewelry. She also denied having any discussions in July of 1993 with the
Appellees about allowing them to use their credit to buy the home at issue in this case.
           After considering all the evidence, the trial court indicated that having only the
credibility of the parties, it found the Appellees to be more credible and awarded title to
the Appellees and reimbursement to the Appellants for the monies they paid in taxes and
insurance after Appellees stopped paying those expenses. The trial court signed a
judgment on December 22, 2004, in which it found that:
Bounpone Menevilay and Sypanome Menevilay are entitled to recover of
and from Von Ratsavong and Fong Souphankhaysy the title to those
premises located at 610 Neomi Street, Dallas, Dallas County, Texas 75217 
. . . . 

Appellants timely filed this notice of appeal.
II. DISCUSSION
           Initially, we note that Appellants have asserted fifteen points of error in their
appellate brief. After careful review of their brief and reply brief, we find that the
Appellants have failed to properly brief Issue Nos. Four through Seven, Issue No. Ten,
Issue No. Eleven, Issue No. Thirteen and Issue No. Fourteen. In Issue No. Four,
Appellants argue that even if there was an oral contract, the Appellees admitted that they
did not comply with the purported oral contract. Specifically, Appellants assert that
Appellees failed to make the $2,000 down payment, pay the insurance and property taxes
on the home. In Issue No. Five, Appellants contend there was a lack of consideration,
thus error was committed in the trial court’s decision to enforce the oral agreement. 
Appellants do not cite to any relevant case law in their discussion of this issue. Rather, in
a two paragraph argument, they assert that lack of consideration was asserted as an
affirmative defense and that Appellees indicated that Appellants wanted $20,000 for the
home, which Appellees refused to pay. Appellants then reach the conclusion that this was
lack of consideration. In Issue No. Six, Appellants assert that there was a failure of
consideration on the Appellees part, making the enforcement of the oral contract by the
trial court error. In Issue No. Seven, Appellants contend that the trial court committed
error by only using the credibility of the parties to make its decision when it was clear that
Appellants did not speak English and the translator was not able to properly translate their
testimony.


 In Issue No. Ten, Appellants contend that error was committed in enforcing
the oral contract because Appellees were unjustly enriched. In Issue No. Eleven,
Appellants contend that error was committed in enforcing the oral contract because the
Appellees lacked clean hands and could not obtain equitable relief. In Issue No. Thirteen,
Appellants allege that the enforcement of the oral contract is not supported by evidence. 
In Issue No. Fourteen, Appellants assert that enforcement of the oral contract is against
the overwhelming weight of the evidence.
           Appellants’ arguments in these issues contain no more than a recitation of the
evidence presented at trial and a sentence, unsupported by any case law, stating that the
standard of review is either de novo or abuse of discretion. Their arguments are not clear
and do not present any legal principles supporting their contentions. Appellants also
failed to cite to any legal authority to support the issues above. The brief “must contain a
succinct, clear, and accurate statement of the arguments made in the body of the brief.” 
Tex. R. App. P. 38.1(g). Rule 38 requires Appellants to provide us with such discussion
of the facts and the authorities relied upon as may be requisite to maintain the point at
issue. See Tesoro Petroleum Corp. v. Nabors Drilling USA, Inc., 106 S.W.3d 118, 128
(Tex. App.--Houston [1st Dist.] 2002, pet. denied); Franklin v. Enserch, Inc., 961 S.W.2d
704, 711 (Tex. App.--Amarillo 1998, no pet.). This is not done by merely uttering brief
conclusory statements, unsupported by legal citations. Tesoro Petroleum Corp., 106
S.W.3d at 128. By presenting such attenuated, unsupported arguments, we find that
Appellants have waived such complaints. We find Issue Nos. Four, Five, Six, Seven,
Ten, Eleven, Thirteen, and Fourteen are inadequately briefed and are, therefore, waived. 
For the reasons stated, we overrule Appellants’ Issue Nos. Four, Five, Six, Seven, Ten,
Eleven, Thirteen, and Fourteen.
           In Issue No. One, Appellants contend that the trial court should have granted their
motion for directed verdict because the Statute of Frauds prohibits the enforcement of the
alleged oral agreement because it contained indefinite terms.


 Texas law is well settled
that a defendant who moves for a directed verdict after the plaintiff rests, but thereafter
elects not to stand on its motion for instructed verdict, and proceeds with her own case,
waives her motion for directed verdict unless the motion is reurged at the close of her
case. See Horton v. Horton, 965 S.W.2d 78, 86 (Tex. App.--Fort Worth 1998, no pet.)
(citing Jacobini v. Hall, 719 S.W.2d 396, 398 (Tex. App.--Fort Worth 1986, writ ref’d
n.r.e.); Wenk v. City Nat’l Bank, 613 S.W.2d 345, 348 (Tex. Civ. App.--Tyler 1981, no
writ)); 1986 Dodge v. State, 129 S.W.3d 180, 183 (Tex. App.--Texarkana 2004, no pet.)
(citing Cliffs Drilling Co. v. Burrows, 930 S.W.2d 709, 712 (Tex. App.--Houston [1st
Dist.] 1996, no writ); McMeens v. Pease, 878 S.W.2d 185, 190 (Tex. App.--Corpus
Christi 1994, writ denied)); Wenk v. City Nat’l Bank, 613 S.W.2d 345, 348 (Tex. Civ.
App.--Tyler 1981, no writ) (applying this line of argument to nonjury trials). In this case,
Appellants moved for a directed verdict after Appellees rested. After the trial court
overruled the motion, Appellants proceeded with their own witnesses. At the conclusion
of the evidence, Appellants did not reurge their motion for a directed verdict. Under
these circumstances, any error under the denial of the motion for directed verdict is
waived. Issue No. One, therefore, is overruled.
           We continue our discussion of Appellants points of error by grouping Issue Nos.
Two, Three, and Nine and discussing them together, as we believe each is raising a legal
sufficiency argument. In Issue No. Two, Appellants argue that the trial court committed
error by enforcing the oral agreement because the Statute of Frauds should have
prohibited the enforcement of an alleged indefinite oral agreement for the sale of
property. In their discussion of Issue No. Two, Appellants rely on the argument made in
Issue No. One. In Issue No. Three, Appellants argue that the exception to the Statute of
Frauds was not met by the Appellees, making the enforcement of the oral agreement by
the trial court an error. Appellants contend that the Appellees did not pay consideration
for the oral contract, failing to meet the first requirement of the exception. Appellants
further contend that there is also no evidence that permanent and valuable improvements
were made to the property with their consent. In Issue No. Nine, Appellants assert that
the trial court committed error in enforcing the oral contract against Mrs. Souphankhaysy
because there was no evidence that Mrs. Souphankhaysy made any oral statements or oral
agreement for the sale of the property in question.Standard of Review
           In reviewing the legal sufficiency of the evidence, we consider the evidence in the
light most favorable to the challenged finding, disregarding all evidence and inferences to
the contrary. Bradford v. Vento, 48 S.W.3d 749, 754 (Tex. 2001). The evidence is
legally sufficient if more than a scintilla of evidence supports the finding. Formosa
Plastics Corp. USA v. Presidio Engineers and Contractors, Inc., 960 S.W.2d 41, 48 (Tex.
1998). “More than a scintilla of evidence exists where the evidence supporting the
finding, as a whole, ‘rises to a level that would enable reasonable and fair-minded people
to differ in their conclusions.’” Burroughs Wellcome Co. v. Crye, 907 S.W.2d 497, 499
(Tex. 1995) (quoting Transp. Ins. Co. v. Moriel, 879 S.W.2d 10, 25 (Tex. 1994)). 
Whether particular facts are sufficient to establish a taking presents a question of law that
we review de novo, but we rely on the fact finder to resolve disputed facts underlying that
determination. See Mayhew v. Town of Sunnyvale, 964 S.W.2d 922, 933 (Tex. 1998). 
When a party appeals from a nonjury trial, it must complain of specific findings and
conclusions of the trial court, because a general complaint against the trial court’s
judgment does not present a justiciable question. Fiduciary Mortgage Co. v. City Nat’l
Bank, 762 S.W.2d 196, 204 (Tex. App.--Dallas 1988, writ denied). When an appellant
does not request or file findings and conclusions by the trial court, as in this case, the
appellate court presumes the trial court found all fact questions in support of its judgment,
and the reviewing court must affirm that judgment on any legal theory finding support in
the pleadings and evidence. Point Lookout West, Inc. v. Whorton, 742 S.W.2d 277, 278
(Tex. 1987).
           As we understand, in Issue No. Two, Appellants allege that there was no evidence
offered of the definite terms of the contract. Particularly, Appellants complain that there
was no evidence of what the actual price of the contract was. Reviewing the record in the
light most favorable to such a finding, we find that the testimony provided by the
Appellees in which they indicated that Ratsavong had represented that the home was
worth $14,500 indicating this was the price of the contract. The agreement they entered
into was for the purchase of the home, and the understanding was that upon completion of
payment of the mortgage, the Appellants would transfer the deed to the Appellees. We
find that the evidence is legally sufficient to support a finding that the oral contract
contained a definite term as to the total price of the contract. We overrule Issue No. Two.
           The Statute of Frauds exists to prevent fraud and perjury in certain kinds of
transactions by requiring agreements to be set out in a writing signed by the parties. See
Haase v. Glazner, 62 S.W.3d 795, 799 n.21 (Tex. 2001) (citing see Restatement
(Second) of Contracts § 131 cmt. c (1981); 9 Williston on Contracts § 21:1 (4th
ed. 1999); see also Hooks v. Bridgewater, 111 Tex. 122, 229 S.W. 1114, 1116 (1921)). 
In Hooks, 229 S.W. at 1116, the Texas Supreme Court held that “to relieve a parol sale of
land from the operation of the statute of frauds, three things were necessary: 1. Payment
of the consideration, whether it be in money or services. 2. Possession by the vendee. And
3. The making by the vendee of valuable and permanent improvements upon the land
with the consent of the vendor; or, without such improvements, the presence of such facts
as would make the transaction a fraud upon the purchaser if it were not enforced.” Each
of these three elements is indispensable, and they must all exist. Hooks, 229 S.W. at
1116.
           In Issue No. Three, we understand Appellants to be making legal insufficiency
claims for a finding of elements one and two of the Statute of Frauds exception described
above. At trial, Appellees testified that they paid a $2,000 down payment as requested by
the Appellants. As soon as they moved into the house, Appellees testified that they began
making repairs, beginning with the bathroom. Other repairs included constructing a
garage and a concrete driveway leading to it, adding a utility room to the house, replacing
a kitchen door, improving the sidewalk, and painting the exterior and interior of the
house. The estimated costs of making these improvements was $28,000. Although much
of this testimony came from Appellees’ oral testimony, the trial court found that such oral
testimony was sufficient and did not require actual documentation of receipts to be
presented. The Appellants’ home was located across the street from the Appellees,
allowing the trial court to infer that the Appellants could have been aware of the repairs
being done to the home. The Appellees also testified that on several occasions,
Ratsavong would come over and have dinner to celebrate the completion of an
improvement. There was no testimony provided by the Appellants that they opposed any
of the repairs being done. Rather, Appellants testified that Appellees would sometimes
ask for permission to complete the improvements. After reviewing the record in the light
most favorable to the implied findings and disregarding all evidence and inferences to the
contrary, we find the evidence was legally sufficient to support a finding that the
consideration paid by the Appellees was in the form of the $2,000 down payment and that
Appellees made valuable and permanent improvements to the property with Appellants’
consent. We therefore overrule Issue No. Three.
           In Issue No. Nine, Appellants contend that there is no evidence to support Mrs.
Souphankhaysy of her ownership of the property. Specifically, Appellants argued that
there was no evidence that Mrs. Souphankhaysy made any oral agreement to transfer title
to the property. Appellants cite to Dalton v. Don J. Jackson, Inc., 691 S.W.2d 765, 767-68 (Tex. App.--Austin 1985, no writ), Vallone v. Miller, 663 S.W.2d 97, 98 (Tex. App.--Houston [14th Dist.] 1983, writ ref’d n.r.e.), and Tex. Fam. Code Ann. § 3.102 (Vernon
1998) to support their contention. In Dalton, the court held that one spouse may not
convey to a third party, so as to effectuate a partition by creating a tenancy-in-common
between the remaining spouse and the third party. See Dalton, 691 S.W.2d at 768. In
Vallone, the court found that one spouse cannot alone convey or encumber joint
management community property unless spouses have otherwise agreed. See Vallone,
663 S.W.2d at 99. The facts in this case differ from those in Dalton and Vallone.
           In this case, the deed to the house was under both Ratsavong’s and
Souphankhaysy’s names. There was testimony that Ratsavong would attend these dinner
celebrations after the completion of a repair. Given the proximity of Appellants’ home to
the property in question, the trial court could have inferred that Souphankhaysy was also
aware of the improvements being done to the home. She testified that she also saw the
Appellees on the trip to California in July of 1993. Although she testified that her jewelry
was sold to pay the down payment on the home and that she did not see the Appellees pay
her husband $2,000, she also could not say with certainty that Appellees did not give him
this money. The trial court, being the judge of the credibility of the witnesses, found the
testimony of the Appellees more credible. In so doing, he could have inferred that Mrs.
Souphankhaysy was also aware of the agreement made with the Appellees concerning the
purchase of the home. A review of the record shows that the disputed fact over whether
an agreement was made between the Appellants and the Appellees was resolved in favor
of the Appellees. We therefore find that the evidence was legally sufficient to support a
finding that Appellant Souphankhaysy was also a party to this oral agreement. Issue No.
Nine, therefore, is overruled.
           In Issue No. Eight, Appellants contend that the Appellees’ claims were barred by
the four-year statute of limitations, making the trial court’s enforcement of the oral
contract error. According to the Appellants, the oral contract was entered into in 1994,
but the lawsuit was not filed until October of 2002, not within the four-year statute of
limitations for a breach of contract in Texas. See Tex. Civ. Prac. & Rem. Code Ann. § 
16.051 (Vernon 1997). In their reply brief, Appellants argue that the Appellees knew in
May of 1994 that they did not receive a deed to the property, constituting a breach of the
agreement. Therefore, the latest the lawsuit could be initiated was April of 1998. We
disagree with Appellants’ assertions.
           A general four-year statute of limitations for breach of contract applies. See Tex.
Civ. Prac. & Rem. Code Ann. § 16.051; Stine v. Stewart, 80 S.W.3d 586, 592 (Tex.
2002). A party asserting a breach of contract claim must sue not later than four years
after the day the claim accrues. Id. It is well-settled law that a breach of contract claim
accrues when the contract is breached or when the claimant has notice of facts sufficient
to place him on notice of the breach. See Murphy v. Campbell, 964 S.W.2d 265, 270
(Tex. 1997); see also Smith v. Fairbanks, Morse & Co., 101 Tex. 24, 102 S.W. 908, 909
(1907); see also Slusser v. Union Bankers Ins. Co., 72 S.W.3d 713, 717 (Tex. App.--Eastland 2002, no pet.).
           Here, the earliest date on which Appellants could have breached the promise to
transfer the deed was in 2001, the date when the mortgage was paid in full and the earliest
Appellees testified Appellants refused to transfer the deed. Appellees sued Appellants in
October of 2002, less than four years after this occurred. Applying the general four-year
statute of limitations to Appellees’ claims, Appellees timely filed suit. See Tex. Civ.
Prac. & Rem. Code Ann. § 16.051. We therefore overrule Issue No. Eight.
           In Issue No. Twelve, Appellants contend that Appellees’ failure to plead and prove
the necessary elements of a trespass to try title action made the enforcement of the oral
contract error. Specifically, Appellants point to the fact that Appellees’ original petition
incorrectly identified the property by listing the address as 611 Neomi Street, instead of
610 Neomi Street. The address 611 Neomi Street is the location of the Appellants’
homestead and was the incorrect address. By failing to specifically and properly identify
the property in their pleadings, Appellants assert that Appellees cannot prevail in a
trespass to try title action.
           Before reaching the merits of Appellants’ challenge, we note that they had cited
only to one case in the body of their argument. After a careful review of Martin v.
Amerman, 133 S.W.3d 262 (Tex. 2004), we fail to see its relevance to Appellants’
assertion and Appellants do not provide such a link in their argument. Among other
things, Tex. R. App. P. 38.1 requires Appellants to provide the Court with a discussion of
the facts and the authorities relied upon as may be requisite to maintain the point at issue. 
See Tesoro Petroleum Corp., 106 S.W.3d at 128; Franklin, 961 S.W.2d at 711. 
Appellants’ minimal briefing of this issue fails to properly preserve the error for review
by this Court.
           Moreover, this argument is raised for the first time on appeal. The record does not
reflect any objection to what appears to be a clerical mistake in the pleadings.


 In order to
preserve an issue for appellate review, a party must present to the trial court a timely
request, objection, or motion stating the specific grounds for the ruling sought. Tex. R.
App. P. 33.1(a). We find that Issue No. Twelve is not properly preserved and waived for
inadequate briefing as well. Issue No. Twelve, therefore, is overruled.
           In Issue No. Fifteen, Appellants assert that in enforcing the oral contract, the trial
court deprived Appellants of their Texas and United States constitutional rights to due
process and the right not to be deprived of their property without due process of law, and
their rights to due course of law. Appellants have also waived any error regarding their
due process claims. We find no indication in the record before us that Appellants voiced
their complaint to the trial court, and therefore, we find that error has not been preserved
in this regard. See Tex. R. App. P. 33.1(a); see also Dreyer v. Greene, 871 S.W.2d 697,
698 (Tex. 1993); Pirtle v. Gregory, 629 S.W.2d 919, 920 (Tex. 1982). Issue No. Fifteen
is overruled.
           Having overruled each of Appellants’ issues on review, we affirm the judgment of
the trial court.

                                                                  RICHARD BARAJAS, Chief Justice
October 27, 2005

Before Barajas, C.J., McClure, and Guaderrama, JJ.
Guaderrama, J., sitting by assignment