NO. 07-09-0280-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

MARCH 30, 2010

_____

In the Interest of L.T., L.M.R., and L.M.L., Children

_____

FROM THE 223RD DISTRICT COURT OF GRAY COUNTY;

NO. 34913; HON. PHIL N. VANDERPOOL, PRESIDING

_____

*Memorandum Opinion*

_____

Before QUINN, C.J., and HANCOCK  and PIRTLE, JJ.

Evelyn Turrentine appeals from a final order terminating her parental rights to L.T., L.M.R., and L.M.L., her minor children.  Sammy Laury also appeals from an order terminating his parental rights to L.M.L.[1]  We affirm.

### Issues Raised by Laury

Laury filed a statement of points he intended to raise on appeal.  It contains many topics that go unmentioned in his appellate brief; so we address only those issues actually mentioned and briefed per Texas Rule of Appellate Procedure 38.1.

---

[1]The fathers of L.T. and L.M.R. did not appeal from the termination of their parental rights.

*Legal and Factual Sufficiency of the Evidence*

The first complaints we address involve the legal and factual sufficiency of the evidence underlying the trial court's decision to terminate the parent/child relationship. Upon doing so, we immediately note that the trial court found three statutory grounds warranting termination. They involved placing or allowing the child to remain in conditions which endangered the child's physical or emotional well-being, engaging in conduct or placing the child with people who engaged in conduct that endangered the child, and failing to comply with a court order establishing prerequisites for the return of the child. Only the first two grounds were addressed by Laury at bar, however. He did not attack the sufficiency of the evidence supporting the last one. This is problematic because the decision to terminate need only be based on or supported by one statutory ground, so long as termination remains in the child's best interest. *In re K.C.B.,* 280 S.W.3d 888, 894-95 (Tex. App.–Amarillo 2009, pet. denied). And, since Laury failed to challenge one of the three grounds, we need not decide whether the evidence was sufficient to warrant termination on the grounds he did address.

As for Laury's attack upon the finding that termination was in the child's best interest, the record contains evidence that 1) he had a history of drug use, 2) he had been unable to maintain a job, 3) he lied about jobs he had purportedly held in the past, 4) he had not paid child support for this child, 5) he voluntarily terminated his rights to two of his other children after being jailed for failing to financially support them, 6) he has had unstable housing, 7) personnel from the Department of Family and Protective Services (Department) smelled marijuana when they visited his home, 8) he had a charge for possession of marijuana pending against him, 9) a psychologist testified that

2

Laury lacked a strong sense of responsibility, lacked the ability to maintain direction and goals, had "questionable motivation to change," did not make maintaining relationships with his children a high priority in his life, had "a lackadaisical approach to the whole issue of parenting responsibility," had "a pattern of trying not to be very clear in his thinking" so he could be less responsible, and presented a "serious concern that he would be at risk to place children in a neglectful situation in the future," 10) the child was removed at birth and, at the time of trial, was between one and two years old, 11) the child was adoptable, and 12) it was hoped that the child could be adopted into a home with the other two children who were also the subject of this termination proceeding and with whom he lived in foster care. Considering this evidence within the framework established in *Holley v. Adams*, 544 S.W.2d 367 (Tex. 1976), we conclude that clear and convincing evidence existed to support the finding that termination was in L.M.L.'s best interest.

That other evidence appeared of record suggesting Laury improved his lot in life and his potential for being an acceptable father is acknowledged. Yet, the focus remains on the best interest of the child, not of Laury. And, the factfinder need not place the child at risk simply to afford a parent one more chance to do that which he should have done all along. Having determined that a statutory ground for termination existed and that clear and convincing evidence supported the finding that termination was in the child's best interest, we overrule Laury's legal and factual sufficiency issues.

*Constitutional Right to Maintain Relationship*

Through his final issue, Laury suggests that the United States Constitution entitles a parent "who [has] gotten on the right track" to keep his child. The particular

3

constitutional provision allegedly mandating same went unmentioned though, as did all other legal authority supporting the contention. Thus, we cannot say that the topic was adequately briefed. *See Ratsavong v. Menevilay,* 176 S.W.3d 661, 666 (Tex. App.–El Paso 2005, pet. denied) (requiring the citation of legal authority in support of one's argument).

Nor do we know of any constitutional proviso that subordinates the best interest of the child to a parental desire to maintain the parent/child relationship merely because the parent may be "on the right track." So too are we unaware of any constitutional mandate requiring the trial court to ignore the historical conduct of a parent when deciding whether to terminate parental rights. Indeed, authority has recognized that the quality and character of one's past actions is often indicative of his future demeanor. *See e.g. Williams v. Williams,* 150 S.W.3d 436, 451 (Tex. App.–Austin 2004, pet. denied). Moreover, if Laury had "gotten on the right track" as suggested, one is left to wonder why he continued to eschew one of the most basic legal obligations due a child, that obligation being the provision of economic support. TEX. FAM. CODE ANN. §151.001(a)(3) (Vernon 2008) (mandating that a parent financially support his child). This continued default could lead a reasonable factfinder to rationally doubt the suggestion that Laury is actually "on the right track."

In sum, possibly being "on the right track" does not mean that Laury arrived at the requisite destination, and under the circumstances before us, the Constitution requires neither the trial court nor this court to so infer. The issue is overruled.

***Issues Raised by Turrentine***

Turrentine also questions the legal and factual sufficiency of the evidence supporting the trial court's decision. She further labels as unconstitutional the statutory provision obligating her to tender potential issues for appeal within 15 days of the execution of the trial court's final judgment. Various of the trial court's decisions regarding the admission of evidence were also erroneous, in her view. We, however, find no substance in any of her contentions.

*Legal and Factual Sufficiency*

Like Laury, Turrentine attacked less than all of the statutory findings upon which termination was based. Indeed, she failed to address the same one that Laury failed to discuss, *i.e.* the failure to comply with obligations contained in a court order. Consequently, we overrule her contention that the evidence was legally and factually insufficient to prove the existence of one or more statutory conditions to termination.

As for the allegation encompassing the child's best interest, we find the following evidence of record. Turrentine 1) had a long history of using cocaine and marijuana, 2) used drugs while pregnant with L.M.L., which resulted in the child testing positive for drugs at birth, 3) did not feel she needed help to stop using drugs, 4) continued to use drugs during the pendency of the case even after completing an in-patient drug treatment program, 5) did not complete her counseling sessions, 6) had an unstable work history, 7) lacked stable housing during the pendency of the case, 8) failed to notify the Department when she moved, 9) sporadically visited her children, 10) had her visitation suspended at one time due to her drug use, 11) told her children she would not see them again prior to the final hearing which comment seriously upset one of the

5

children, 12) had several of her children express fear about returning to live with her, 13) had been incarcerated for forgery, and 14) had failed to pay all her child support. Other evidence illustrated that all three children are adoptable and her older children believed she has lied to them. Furthermore, the psychologist who examined Turrentine opined that she did not show a strong sensitivity to her children's needs, exercised erratic judgment, had a pattern of "weak and questionable judgment in her care of the children," had a pattern of placing the children in "risky . . . situations, around risky persons," and illustrated little motivation for change. Turrentine also admitted to returning to drugs at one point because she thought the "case was over." In *toto*, the foregoing is clear and convincing evidence upon which a trial court could conclude that termination of the parental relationship was in the best interest of the children.

That Turrentine recently secured employment, found an apartment, and bought gifts for the children also appeared in the record. Nonetheless, the latter evidence does not overwhelm that described above or otherwise impugn the trial court's finding. The issue is overruled.

*Constitutionality of the Filing Period*

Turrentine next argues that §263.405(b)(2) of the Family Code is unconstitutional. That section requires one appealing from a termination order to file a statement of points upon which he intends to appeal. TEX. FAM. CODE ANN. §263.405(b)(2) (Vernon 2008). Furthermore, that statement must be filed within 15 days of the date the final order was signed. *Id.* §263.405(b). Because of the rather short time limit involved, Turrentine believed that it prevented her from receiving the

effective assistance of trial counsel and, therefore, due process. We disagree and overrule the issue.

Before it can be said that one has been denied the effective assistance of counsel, the claimant must prove that counsel's performance was both unreasonably deficient and harmful. *In re J.P.B.,* 180 S.W.3d 579, 574 (Tex. 2005). And, before it can be said that the time period in question somehow prevented counsel from being effective, it would be logical for Turrentine to prove that her counsel was prevented from doing something. Indeed, one cannot legitimately claim foul in being denied the time to do something if he never thought about or intended to do it. And, what, if anything, Turrentine or her counsel would have done at bar but for the 15-day time period went unmentioned. Rather, the number of topics included in her statement of points (*i.e.* 13) indicates that the provision stood as no impediment to her ability to attack the final judgment. So, we cannot say that she proved that she was denied effective counsel and, therefore, due process because of §263.405(b) of the Family Code.

*Admission of Hearsay*

Turrentine finally contends that the trial court erred in allowing the admission of evidence regarding drug tests she and L.M.L. underwent and the results of same. The specific evidence was contained in records maintained by the Department but which allegedly failed to qualify as business records. Thus, the statements therein about drug use and drug testing purportedly were hearsay and their consideration allegedly denied her due process. We overrule the issue.

Assuming *arguendo* that the reports were inadmissible hearsay, we nonetheless find their admission to be harmless. This is so because like evidence was admitted

7

elsewhere without objection. *See In re E.A.K.,* 192 S.W.3d 133, 148 (Tex. App.–Houston [14th Dist.] 2006, pet. denied) (holding that error in the admission of evidence is harmless when like evidence comes in elsewhere without objection). For instance, one expert testified that Turrentine admitted to him that between 2002 and 2007 she smoked marijuana daily and ingested cocaine twice a week, except for the time she was in prison. That five-year time span encompassed the months during which she was pregnant with L.M.L., who was born in April of 2007. She also admitted to this expert that she was seeing him because she failed various drug tests administered to her. Turrentine further admitted to the witness that she did not stop taking drugs until September of 2007, or some five months after L.M.L. was born. The witness also testified, without objection, to being told either by Turrentine or a caseworker that L.M.L. had tested positive for drugs at his birth. So, as can be seen, the evidence about which Turrentine now complains was actually redundant of other evidence about which she uttered no complaint below or here.

Having overruled each issue, we affirm the judgment of the trial court.


Brian Quinn
Chief Justice

8