**Opinion filed July 25, 2013**



In The

# Eleventh Court of Appeals

_____

## No. 11-13-00029-CV

_____

## IN THE INTEREST OF M.R., A CHILD

**On Appeal from the 161st District Court**
**Ector County, Texas**
**Trial Court Cause No. B-2980-PC**

### M E M O R A N D U M   O P I N I O N

This is an appeal from orders terminating the parental rights of M.R.'s mother and father. The father's parental rights were terminated after a de novo hearing in the district court. The mother's request for a de novo hearing was denied. Both parents appeal. We affirm as to the father and reverse and remand as to the mother.

## I. *Issues*

M.R.'s father presents six issues for review, and M.R.'s mother presents thirteen. In his first issue, the father challenges the trial court's denial of his motion for directed verdict. In the second issue, the father complains that the trial court erred by not reviewing the record from the earlier hearing before the

associate judge until after the parties had rested. In the third issue, the father contends that the trial court erred in permitting the Department of Family and Protective Services to proceed on its first amended petition instead of its second amended petition. The father contends in his fourth issue that the trial court erred in naming the Department as the managing conservator. In his fifth issue, the father contends that the trial court "abused its discretion . . . concerning the legal and factual sufficiency of evidence regarding involuntary termination of parental rights." In his final issue, the father contends that the trial court "erred in not using the proper legal standards in determining conservatorship."

The mother asserts in her first issue that the trial court erred in denying her request for a de novo hearing. In her second issue, the mother contends that she was denied effective assistance of counsel. In the third and fourth issues, she contends that her motion for new trial should have been granted based upon her claim of ineffective assistance of counsel and upon newly discovered evidence. In the fifth issue, she complains of the trial court's failure to enter findings of fact and conclusions of law. In her sixth, eighth, tenth, and twelfth issues, the mother challenges the legal sufficiency of the evidence to support the termination of her rights. In the remaining issues, she challenges the factual sufficiency of the evidence.

## II. *The Father's Appeal*

In his first issue, the father challenges the denial of his motion for directed verdict. The record shows that the father moved for a directed verdict after the Department rested but that he then presented evidence and did not later renew his motion for a directed verdict. The Department asserts that the father waived this issue by failing to renew his motion for directed verdict after he presented additional evidence. The Department's contention is supported by case law. *See Ratsavong v. Menevilay*, 176 S.W.3d 661, 667 (Tex. App.—El Paso 2005, pet.

2

denied) (citing numerous authorities for this proposition); *Tex. Animal Heath Comm'n v. Miller*, 850 S.W.2d 254, 255–56 (Tex. App.—Eastland 1993, writ denied). Therefore, it does not appear that the father preserved this issue.

Moreover, the father's argument in this issue is without merit. The father argues that, at the time the Department rested, the only evidence before the trial court at the de novo hearing was the testimony of Michelle Wyatt, the Department's conservatorship supervisor, and that Wyatt's testimony was insufficient to carry the Department's burden of proof. The record shows, however, that Wyatt's testimony was not the only evidence that had been admitted at the time the Department rested. Three exhibits had been offered and admitted into evidence. The first exhibit was a copy of the reporter's record from the hearing before the associate judge at which five witnesses testified. The second and third exhibits were copies of judgments showing that the father had recently been convicted of evading arrest or detention with a prior conviction and of aggravated assault with a deadly weapon. Because evidence other than Wyatt's testimony had been admitted into evidence, the father's contention in his first issue is without merit. We overrule the father's first issue.

In his second issue, the father asserts that the trial court erred or abused its discretion when it waited until after the parties had rested to review the exhibit containing the reporter's record from the hearing that was held by the associate judge. The father also argues that the admission of that exhibit violated his right to due process because he had not received proper notice of the Department's intent to introduce it. The Family Code provides: "In the de novo hearing before the referring court, the parties may present witnesses on the issues specified in the request for hearing. The referring court may also consider the record from the hearing before the associate judge, including the charge to and verdict returned by a jury." TEX. FAM. CODE ANN. § 201.015(c) (West Supp. 2012). Not only does the

3

statute permit a referring court in a de novo hearing to review the record from the earlier hearing held by the associate judge, but the record from the earlier hearing was admitted into evidence as an exhibit in this case. We are not aware of any provision that requires a trier of fact to review exhibits before the parties rest or that prohibits a trier of fact from reviewing exhibits after the parties have rested, and the father has cited no authority for that proposition. Furthermore, the day before the de novo hearing, the Department filed a motion requesting the trial court to consider the record from the hearing held by the associate judge. The father and his attorney were both present at the earlier hearing; the father had an opportunity to cross-examine witnesses and to present evidence at that hearing. Thus, the contents of the exhibit offered no surprise to the father. We hold that the trial court was authorized by Section 201.015(c) to consider the record from the hearing held by the associate judge, that the trial court did not abuse its discretion in admitting the record from that hearing into evidence as an exhibit even though the father's attorney had not been provided with a copy prior to the de novo hearing, and that the trial court did not err in reviewing the exhibit after the parties had rested. The father's second issue is overruled.

In his next issue, the father complains that the trial court erred by allowing the Department to proceed at the de novo hearing on its first amended petition instead of its second amended petition. At the de novo hearing when the Department announced its intent to abandon the second amended petition and proceed on the first amended petition, the father objected to the lack of notice and to the violation of procedural rules. Generally, a pleading that has been substituted by an amended pleading is no longer regarded as a pleading in a case. TEX. R. CIV. P. 65. However, a trial court "shall" permit a party to amend their pleadings at any time "unless there is a showing that such filing will operate as a surprise to the opposite party." TEX. R. CIV. P. 63. In this case, the father has shown no surprise.

4

The first and second amended petitions were similar; they alleged the same grounds for termination of the father's parental rights except that the second amended petition contained one extra ground that was not in the first amended petition. Proceeding upon the first amended petition had the effect of abandoning one of the grounds upon which the father's parental rights could be terminated. No new grounds for termination were included in the petition upon which the Department proceeded. Because the first amended petition did not operate as a surprise to the father, the trial court did not err in permitting the Department to proceed upon that petition. The father's third issue is overruled.

In his next issue, the father argues that the trial court acted contrary to state and federal law when it named the Department, rather than the father, as the managing conservator of M.R. We disagree. The trial court did not act contrary to law. The findings necessary to appoint a nonparent as sole managing conservator need only be established by a preponderance of the evidence. *In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007). Consequently, we review a trial court's conservatorship decision under a less stringent standard of review than the standard for termination. *Id.* A conservatorship determination is subject to review for an abuse of discretion and may be reversed only if that determination was arbitrary and unreasonable. *Id.* The record shows that the Department's goal for M.R. was adoption, that his current foster parent wanted to adopt him, that he was very happy and was thriving in the care of the foster parent, and that neither the mother nor the father had offered any suitable alternatives for placement. Furthermore, family reunification was not successful in this case because both parents were incarcerated and because no suitable relatives were available to care for M.R. The father's assertion that it would have been in M.R.'s best interest for the father, who was incarcerated at the time of removal and remained incarcerated at the time of

the de novo hearing, to be named as a managing conservator is not supported by the record. The father's fourth issue is overruled.

In his fifth issue, the father challenges the legal and factual sufficiency of the evidence. The termination of parental rights must be supported by clear and convincing evidence. TEX. FAM. CODE ANN. § 161.001 (West Supp. 2012). To determine if the evidence is legally sufficient in a parental termination case, we review all of the evidence in the light most favorable to the finding and determine whether a rational trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). To determine if the evidence is factually sufficient, we give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002). To terminate parental rights, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(1)(A)–(T) and that termination is in the best interest of the child. FAM. § 161.001.

The trial court found that the father committed five of the acts listed in Section 161.001(1). One of those was a finding made pursuant to Section 161.001(1)(Q) that the father had "knowingly engaged in criminal conduct that has resulted in the father's conviction of an offense and confinement or imprisonment and inability to care for the child for not less than two years from the date [of] filing the petition." The father does not dispute this finding in his brief, and it is supported by the record. Because a finding that a parent committed one of the acts listed in Section 161.001(1)(A)–(T) is all that is required under that statute, we need not address the father's arguments regarding the sufficiency of the evidence to support the trial court's other findings under Section 161.001(1). *See* TEX. R. APP. P. 47.1.

6

In this issue, the father also challenges the sufficiency of the evidence in support of the trial court's finding that termination of his parental rights is in M.R.'s best interest. With respect to the best interest of a child, no unique set of factors need be proved. *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied). But courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not limited to, (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Id.* Additionally, evidence that proves one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *C.J.O.*, 325 S.W.3d at 266.

The record shows that M.R. was nineteen months old at the time of removal and that, at the time of the de novo hearing, the father had not seen him for almost three years. The father was in jail at the time of removal. He had recently been arrested for stabbing a man in the back five or six times and severely injuring the man. While this termination case was pending, the father pleaded guilty to the offense of aggravated assault with a deadly weapon and, pursuant to a plea bargain agreement, received a sentence of confinement for eight years. The father had previously assaulted the mother while M.R. was at home, and he had two convictions for evading arrest or detention and one conviction for assault on a

peace officer.  The father could not provide M.R. with a stable home and had offered no suitable relative placement for M.R.

The record also shows that M.R. had been placed with his current foster parent, D.W., for twenty-seven months and that D.W. wanted to adopt M.R.  In terms of parenting, Wyatt rated D.W. as a "ten" on a scale of one to ten.  D.W. wants to provide a permanent home for M.R., and M.R. is happy and thriving in his placement with D.W.  Wyatt believed that it would be in M.R.'s best interest to remain with D.W. in a loving and stable home and for D.W. to be allowed to adopt M.R.

Based on the evidence presented at trial, the trial court could reasonably have formed a firm belief or conviction that termination of the father's parental rights would be in the best interest of M.R.  We cannot hold that the finding as to best interest is not supported by clear and convincing evidence.  The evidence is both legally and factually sufficient to support the finding that termination of the father's parental rights is in the best interest of M.R.  The father's fifth issue is overruled.

In his final issue, the father contends that the trial court erred by failing to use the proper legal standards in determining the conservatorship of the child.  In his brief, the father states that he wishes to preserve his challenge to D.W.'s "further conservatorship."  The father again urges that he should have been named a conservator. The trial court did not apply improper legal standards in determining M.R.'s conservatorship.  Because the father's parental rights were terminated, the father appropriately was not named a conservator for M.R.  The father's sixth issue is overruled.

## III. *The Mother's Appeal*

The mother presents thirteen issues for review.  We will start by addressing her challenges to the legal sufficiency of the evidence as asserted in her sixth,

eighth, tenth, and twelfth issues. In these issues, the mother contends that the evidence is legally insufficient to support the termination of her rights under Section 161.001(1)(D), (E), and (O) and to support the best interest finding under Section 161.001(2).

To terminate parental rights, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(1)(A)–(T) and that termination is in the best interest of the child. FAM. § 161.001. The trial court found that the mother committed three of the acts listed in Section 161.001(1): that she knowingly placed or knowingly allowed the child to remain in conditions or surroundings that endangered the physical or emotional well-being of the child, that she engaged in conduct or knowingly placed the child with persons who engaged in conduct that endangered the physical or emotional well-being of the child, and that she failed to comply with the provisions of a court order that specifically established the actions necessary for her to obtain the return of the child who had been in the conservatorship of the Department for more than nine months and had been removed due to abuse or neglect. *See* FAM. § 161.001(1)(D), (E), (O).

The record shows that the mother's husband, M.R.'s father, committed violent acts and that he physically abused the mother while M.R. was in their care. In May 2010, the mother and father got into a fight while M.R. was in their care. As a result of that fight, the mother's face was "beaten up a little bit"; her eye was swollen; and she had "marks on her face, on her throat, stuff like that." The father was arrested later, and sometime after the father's arrest, the mother moved in with Daniel McAfee. One night in August 2010 while M.R. was in her care, the mother got intoxicated and engaged in an altercation with Daniel McAfee. McAfee testified that, when he came home after drinking and hanging out with some friends, the mother "went crazy," screamed and yelled, threw a lamp, and bit

McAfee.  M.R. was in another room of the apartment at the time the mother assaulted McAfee.  McAfee kicked the mother and M.R. out of his apartment.  He called the police because the mother would not leave; she continued yelling and screaming and beating on the door.  The police came and arrested the mother.  The mother left M.R. with a girl named Blane Decker.  The next day, Decker returned to McAfee's apartment with M.R. and asked McAfee what to do with M.R.  McAfee called the police and "CPS."  Based on McAfee's call, the Department eventually took custody of M.R.  The mother provided the Department the name of one person with whom to place M.R.; however, the Department determined that that person was not an appropriate placement.  M.R. was removed and placed in a foster home.  The mother subsequently suggested another placement that was also determined by the Department to be inappropriate.  The mother remained incarcerated at the time of the final hearing in this case and participated by telephone.

The mother had a 2008 felony conviction for assaulting a peace officer, for which she was originally placed on community supervision.  On October 28, 2010, her community supervision was revoked.  Upon revocation, the mother was sentenced to confinement for two years in the Institutional Division of the Texas Department of Criminal Justice.  There was also some evidence that the mother had been imprisoned for possessing a controlled substance with the intent to distribute it.

At the time of the final hearing before the associate judge, M.R. was two years and seven months old and had been in the Department's care for a year.  M.R. came into the Department's care soon after the mother was arrested.  M.R. was nineteen months old at the time.

After M.R.'s removal, the trial court ordered the parents to participate in various services, including counseling, parenting classes, a psychological or

psychiatric evaluation, drug testing, and a drug and alcohol assessment. These provisions were contained in the trial court's "Temporary Order Following Adversarial Hearing." As stated in that order, compliance with each provision was necessary for M.R.'s return. The mother completed some of the services while incarcerated, and she sent cards to M.R. monthly. The Department's conservatorship worker in this case, Samantha Sanchez, testified that, although the mother completed some of the court-ordered services, the mother failed to comply with the trial court's order. She did not attend counseling or get a drug and alcohol assessment. Sanchez acknowledged that the mother may have "tried to do as much as she could" while she was incarcerated and agreed that some of the services, such as the drug and alcohol assessment and the psychological evaluation, could not be completed because of the mother's incarceration.

We hold that there was clear and convincing evidence from which the trial court could reasonably have formed a firm belief that the mother engaged in conduct or knowingly placed the child with persons who engaged in conduct that endangered the physical or emotional well-being of the child. To support termination under Section 161.001(1)(E), the offending conduct does not need to be directed at the child, nor does the child actually have to suffer an injury. *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009). Drug use and domestic violence may constitute evidence of endangerment. *Id.*; *C.J.O.*, 325 S.W.3d at 265. Subjecting a child to a life of uncertainty and instability may also endanger the child's physical and emotional well-being. *In re R.W.*, 129 S.W.3d 732, 739 (Tex. App.—Fort Worth 2004, pet. denied). The evidence is legally sufficient to support the trial court's finding under Section 161.001(1)(E). The mother's eighth issue is overruled.

Furthermore, there was also clear and convincing evidence that the mother failed to comply with the provisions of a court order that specifically established

the actions necessary for her to obtain the return of the child who had been in the conservatorship of the Department for more than nine months and had been removed due to abuse or neglect. Section 161.001(1)(O) does not "make a provision for excuses" for the parent's failure to comply with the court-ordered services. *In re J.S.*, 291 S.W.3d 60, 67 (Tex. App.—Eastland 2009, no pet.) (quoting *In re T.N.F.*, 205 S.W.3d 625, 631 (Tex. App.—Waco 2006, pet. denied)); *see In re D.N.*, No. 07-12-00508-CV, 2013 WL 1964813, at *11 (Tex. App.— Amarillo May 9, 2013, no pet. h.). The burden of complying with a court order is on the parent, even if the parent is incarcerated. *In re D.N.*, 2013 WL 1964813, at *11. The mother's failure to comply with the court's order is not excused by her incarceration. Consequently, the evidence is legally sufficient to support the trial court's finding under Section 161.001(1)(O). The mother's tenth issue is overruled. Because the evidence is legally sufficient under subsections (E) and (O), we need not address the finding made pursuant to subsection (D). *See* TEX. R. APP. P. 47.1.

With respect to the best interest of the child, we hold that there was also clear and convincing evidence that termination of the mother's parental rights would be in the best interest of M.R. In reaching this conclusion, we applied the best-interest standard set out above in our discussion of the father's fifth issue and considered the evidence presented at trial in light of the *Holley* factors. *See Holley*, 544 S.W.2d at 371–72. The record shows that, at the time of the final hearing before the associate judge, M.R. had been in the Department's care for one year and had been in his current placement with D.W. for ten months—since October 21, 2010. According to Sanchez, M.R. and D.W., who is a youth minister, are "very bonded, very attached." D.W. is the person that M.R. runs to when he is scared, when he is happy, and when he wants a hug. M.R. calls D.W. "Daddy," and M.R.'s favorite book is "Daddy and Me." Sanchez testified that D.W. is

interested in adopting M.R. and that the Department supports the proposed adoption. M.R. is thriving in D.W.'s care.

M.R. was removed because of his parents' incarcerations and their inability to provide an appropriate placement for M.R. Not only did the mother commit criminal acts that caused her to be incarcerated and unable to care for M.R., but she maintained a relationship with M.R.'s father, a violent and abusive man. Sanchez testified that she did not believe that the mother had demonstrated that she is able to provide a safe and appropriate home environment for M.R. Sanchez believed that the termination of both parents' rights would be in M.R.'s best interest. The evidence is legally sufficient to support the trial court's finding that termination of the mother's parental rights is in M.R.'s best interest. The mother's twelfth issue is overruled.

We next address the mother's second issue. In that issue, she asserts that her trial counsel rendered ineffective assistance of counsel. A parent in a termination case has the right to "effective counsel." *In re M.S.*, 115 S.W.3d 534, 544 (Tex. 2003). To prevail on a claim of ineffective assistance of counsel, a parent must generally show that trial counsel's performance was deficient and that the deficient performance was so serious as to deny the parent a fair and reliable trial. *J.O.A.*, 283 S.W.3d at 341–42 (following the two-pronged analysis of *Strickland v. Washington*, 466 U.S. 668 (1984)). However, when an indigent parent is altogether denied counsel at a critical stage of the litigation, prejudice is presumed. *Strickland*, 466 U.S. at 692; *United States v. Cronic*, 466 U.S. 648, 659 (1984); *see also Penson v. Ohio*, 488 U.S. 75 (1988) (presumption of prejudice extends to the denial of counsel on appeal); *Lockwood v. Tex. Dep't of Family & Protective Servs.*, No. 03-12-00062-CV, 2012 WL 2383781 (Tex. App.—Austin June 26, 2012, no pet.) (mem. op.).

At the end of the final hearing held by the associate judge, the associate judge did not issue a ruling because she had not had time to go through all of the exhibits. The associate judge announced that she would enter a ruling later that day—Friday, August 19, 2011—if possible but not later than "Monday at 5 p.m." However, the associate judge did not issue any ruling in this case for sixteen months. She issued a letter ruling on December 14, 2012, and signed the order of termination on January 11, 2013. The record from a hearing held by the district judge on the mother's motion for new trial in this case shows that her appointed trial counsel retired in 2011. When he represented the mother at the termination hearing, he had quit taking new cases. Trial counsel thought he had withdrawn from this case after that hearing but, apparently, "missed this case." Although he had not withdrawn from this case, trial counsel retired and shut down his office.

During the sixteen-month interval between the associate judge's hearing and her ruling, the mother attempted unsuccessfully to contact trial counsel to inquire about the case and to find out what she needed to do to prevent her rights from being terminated. The mother was released from prison in March 2012, seven months after the hearing. The record shows that the mother filed a pro se motion, in which she requested that an attorney be appointed, and that she sent letters to the associate judge requesting that new counsel be appointed. In a June 2012 letter, she explained that she had "no attorney" representing her but that she was out of prison and would like to reopen the case so that a homestudy could be performed. In response, the court administrator wrote the mother and informed her that her letter constituted an improper ex parte communication, that no action would be taken in response to the letter, and that she should contact her attorney.

We note that the parties have filed in this case a second joint motion to render judgment effectuating an agreement of the parties. The parties agree that the portion of the judgment below terminating the mother's parental rights to M.R.

should be reversed and the matter should be remanded for a de novo trial before the referring court. In the motion, the Department concedes that the mother received ineffective assistance from her trial counsel and that reversible error occurred. M.R.'s attorney ad litem joins the motion. Having considered the facts of this case and the authorities cited above, we agree. The mother was denied counsel altogether at a critical stage of the case, and we must presume prejudice under these circumstances. *See Cronic*, 466 U.S. at 659. The mother's second issue is sustained, and the second joint motion to render judgment effectuating the agreement of the parties is granted. We need not address the remainder of the mother's issues as they are not dispositive of this appeal. *See* TEX. R. APP. P. 47.1.

We affirm the trial court's order terminating the father's parental rights. We reverse the trial court's order with respect to the mother insofar as it terminated the mother's parental rights, and we remand this cause to the district court for further proceedings regarding the mother's parental rights. Any proceeding on remand must be commenced within 180 days of this court's mandate. TEX. R. APP. P. 28.4.

MIKE WILLSON

JUSTICE

July 25, 2013

Panel consists of: Wright, C.J.,
McCall, J., and Willson, J.