

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-24-00184-CV

**H2ECO BULK, LLC,**
Appellant

v.

Bill **BRINKMEYER** and Sheri Brinkmeyer,
Appellees

From the County Court at Law, Gillespie County, Texas
Trial Court No. 16914-CCV
Honorable Christopher Nevins, Judge Presiding

Opinion by:    Lori Massey Brissette, Justice

Sitting:        Irene Rios, Justice
                Lori Massey Brissette, Justice
                H. Todd McCray, Justice

Delivered and Filed: July 30, 2025

REVERSED AND REMANDED

H2Eco Bulk, LLC appeals a judgment entered after a jury trial. After reviewing the parties' briefs and the trial court record, and after considering oral argument, we reverse the trial court's judgment and remand for a new trial because the evidence at trial was legally insufficient to support the damages awarded.

## BACKGROUND

In June of 2021, the Brinkmeyers sought to replaster their pool. They were told by a plaster company that they would have to drain the pool, have it replastered, and then immediately fill it with water to allow the plaster to cure properly without cracking. Because the timing of the water delivery was crucial to the success of the project, first the plaster company and then the Brinkmeyers reached out to H2Eco by phone to discuss the project and the importance of the delivery date. Having been assured that H2Eco had experience in such projects and understood the importance of the delivery date, the Brinkmeyers agreed to contract with H2Eco for the water delivery, agreeing on the amount of water needed, the price, and the delivery date before paying for the delivery over the phone.

Subsequently, H2Eco sent an email confirmation to the Brinkmeyers, confirming the date of delivery, the price, and the amount of water to be delivered, but also including the following additional statement: "While we cannot guarantee times, our driver will call 1 hour before arriving on site." Similar language was included in a separate invoice email sent by H2Eco, within a three-page attachment entitled "Terms and Conditions."[1] The Brinkmeyers never replied, as they testified they did not read the emails until after delivery.

As planned, the Brinkmeyers drained their pool and had it replastered. They then waited for the water delivery. When H2Eco did not arrive as scheduled, the Brinkmeyers and their plaster company reached out several times to H2Eco inquiring of the whereabouts of the delivery truck and were told the driver was on his way. But, the truck did not arrive that day.

---

[1] Notably, H2Eco did not assert, in the trial court or on appeal, that any other provision of the emailed terms and conditions apply, including an arbitration clause, a disclaimer, and a limitation of damages provision.

In an attempt to forestall cracking, the Brinkmeyers started a slow stream of water from their well into the pool and allowed it to run all night.[2] The driver finally arrived the following day, late in the afternoon, explaining that the driver did not have access to a fuel card necessary for the drive. By then, the plaster on the sides of the pool had cracked. The plaster at the bottom of the pool, which had been covered by the overnight water flow, had not cracked.

The Brinkmeyers sued H2Eco for breach of contract, fraud, fraudulent inducement, and violations of the Texas Deceptive Trade Practices Act. The only witnesses to testify were the Brinkmeyers, Susan and Louis Tessie – the owner and employee of the company that performed the plaster work, and a sales and operations employee of H2Eco. The parties agreed to bifurcate the trial and have the attorneys' fees submitted to the court post-verdict. The jury returned a verdict finding that the emailed terms and conditions were not part of the parties' agreement, that H2Eco failed to comply with the agreement to deliver the water on the agreed delivery date, and that its failure to do so was not excused. The jury further found that H2Eco fraudulently induced the Brinkmeyers into entering into the agreement for water delivery, that H2Eco engaged in a false, misleading, or deceptive act or practice that the Brinkmeyers relied on to their detriment and which was the producing cause of damages, but that such deceptive act or practice was not engaged in knowingly. Finally, the jury found the Brinkmeyers' own negligence contributed to or caused their own damages, apportioning 30% of the responsibility to the Brinkmeyers.

The jury answered three questions as to damages. First, the jury found that, as a result of H2Eco's breach of contract, the Brinkmeyers suffered $14,900 in past damages and $500 in future damages. As a result of H2Eco's fraudulent inducement, the jury found the Brinkmeyers suffered

---

[2] The Brinkmeyers did not turn the water on completely to fill the pool for the very reason that they ordered the water delivery in the first place, to avoid burning out their well—their only source of water for their home.

$15,000 in past damages and $20,000 in future damages. And, the jury found that, as a result of H2Eco's deceptive act or practice, the Brinkmeyers suffered $15,000 in past damages and $20,000 in future damages. The trial court entered a final judgment awarding the Brinkmeyers $51,800.00 in actual damages, $2,621.36 in expenses and costs, and $64,265.15 in attorneys' fees.[3] The trial court also awarded an additional $15,000.00 in fees in the event of appeal.

## DISCUSSION

On appeal, H2Eco contends the trial court erred by submitting the case to the jury without expert evidence supporting causation, by submitting the breach of contract claim to the jury, and by submitting a question to the jury as to whether the emailed terms and conditions constituted part of the agreement. H2Eco, further, contends the trial court erred in denying H2Eco's motion for a directed verdict as to the fraudulent-inducement and DTPA claims. Finally, H2Eco contends the damages findings are unsupported by the record.

**Sufficiency of the Evidence as to Causation**

First, H2Eco contends the Brinkmeyers were required to bring expert testimony to prove causation, specifically that the failure to immediately fill the pool with water caused the cracking. Whether expert testimony is necessary to prove causation is a question of law to be reviewed de novo. *FFE Transp. Servs., Inc. v. Fulgham*, 154 S.W.3d 84, 89–90 (Tex. 2004); *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 583 (Tex. 2006).

In so reviewing, we should determine whether the lay testimony provided is any evidence to support causation, using the standard appropriate to a legal sufficiency challenge. *Seitel Data Ltd. v. Simmons*, 362 S.W.3d 782, 785 (Tex. App.—Texarkana 2012, no pet.). A legal sufficiency challenge "will be sustained when (a) there is a complete absence of evidence of a vital fact, (b)

---

[3] The record is not clear as to how the trial court arrived at the final damages amount, but we surmise that it represents some sort of an aggregation of the jury damage findings and some application of the proportionate responsibility.

the court is barred from rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact." *Id.* (quoting *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)). "Evidence does not exceed a scintilla if it is 'so weak as to do no more than create a mere surmise or suspicion' that the fact exists." *Id.* (quoting *Kroger Tex. Ltd. P'ship v. Suberu*, 216 S.W.3d 788, 793 (Tex. 2006)).

Many cases involving a standard of care require expert testimony. *See, e.g., Fulgham*, 154 S.W.3d at 89–90 (expert testimony required to establish standard of care relating to the condition of a leased refrigerated trailer). But an industry standard of care, which would require someone familiar with the industry, is different than causation which may be within a common juror's understanding. Cases involving medical or legal malpractice also generally require expert testimony relating to both standard of care and causation, because such matters are outside the common juror's understanding. *See, e.g., Alexander v. Turtur & Associates, Inc.*, 146 S.W.3d 113 (Tex. 2004) (requiring expert testimony to determine whether, absent legal malpractice, client would have prevailed in underlying action); *Lenger v. Physician's Gen. Hosp., Inc.*, 455 S.W.2d 703 (Tex. 1970) (requiring expert testimony as to cause of colon separation). H2Eco relies on cases such as these, involving complex issues, to support its position that without expert testimony the evidence is insufficient to support the jury's verdict.

But, more akin to the issue at hand is the case of *Seitel Data*. 362 S.W.3d at 791–93. In *Seitel Data*, the court held lay testimony was sufficient to support the jury's finding that seismic testing caused damage to a nearby water well. *Id.* The testing involved underground explosions which caused localized vibrations of the earth. "Very shortly after testing ended, Simmons' previously quite productive water well began slowing production due to the sudden appearance in

the water of large and increasing quantities of sand mixed with the water. About three months after the cessation of seismic testing, the quantity of sand became sufficient to cause the motor-driven shaft of the submerged well pump to break; the free-wheeling pump shaft overheated the pump and caused it to melt to the casing." *Id.* at 785.

The court in *Seitel Data* noted the evidence presented went, not simply to the temporal proximity between the testing and the well problems, but also to the vibrations felt and heard by the Simmons on their property. *Id.* at 793. A vice president of a drilling company that drilled the well, who had fifteen years of experience in the water well business, also testified that it was the sudden sand buildup that caused the well pump to break. *Id.* at 787. Ultimately, the court held that the jury's finding that the vibrations caused the sand to shift which impacted the nearby well was within their common sense and understanding, not requiring expert testimony. *Id.* at 794. The court elaborated:

> As explained by the Texas Supreme Court, lay testimony is adequate to prove causation in those cases in which general experience and common sense will enable a layman to determine, with reasonable probability, the causal relationship between the event and the condition. Generally, lay testimony establishing a sequence of events which provides a strong, logically traceable connection between the event and the condition is sufficient proof of causation.

*Id.* at 791 (internal citations omitted). Likewise, in *Morgan v. Compugraphic Corp.*, 675 S.W.2d 729, 733 (Tex. 1984), a jury's causation finding was sufficiently supported by lay testimony establishing the connection between the timing of the release of chemical fumes from a typesetting machine and the plaintiff's injury. And, in *Ins. Co. of N. Am. v. Kneten*, 440 S.W.2d 52, 54 (Tex. 1969), the court found lay testimony sufficient to establish causation between an electric shock suffered by the plaintiff and a following heart attack.

"Expert testimony is required when an issue involves matters beyond jurors' common understanding." *Seitel Data*, 362 S.W.3d at 791–92 (*citing Mack Trucks*, 206 S.W.3d at 583). But,

"[j]urors are not blank slates, and can be expected to bring both intelligence, knowledge, and the power to reason logically to the table." *Id.* at 793. The question is whether the proof submitted is more than simply conjecture or suspicion, whether it shows more than a possibility. *Lenger*, 455 S.W.2d at 706.

Here, as in *Seitel Data*, there is more than temporal proximity. Both Brinkmeyers testified they were aware of the need to fill the pool quickly to avoid cracking, which was why the timing of delivery was such an important consideration when speaking with H2Eco and why they started the flow from their well when H2Eco did not arrive. Mr. Brinkmeyer testified that the cracking occurred the following day, between the time the pool was plastered and the time the water truck finally arrived, just as the plaster company told them it would if not immediately covered with water. He also testified that the cracks stopped forming once the pool was filled with water. Mr. Brinkmeyer's testimony was corroborated by Louis Tessier, from the plaster company, who also testified that no cracking occurred where the water had covered the bottom of the pool overnight. Further, Susan Tessier, the owner of the plaster company, testified that she personally called H2Eco before the Brinkmeyers ever spoke with them to ensure that the company understood "they needed to do it at a certain time or the job would be ruined."

Louis Tessier, who has eighteen years of experience in the pool plastering business, testified that the plaster they used must be covered in water immediately or it might crack. He pointed the jury to the fact that cracks occurred on the sides of the pool where the sun was hitting the plaster causing it to dry out. H2Eco objected to that testimony, as Mr. Tessier was not offered as an expert, but the trial court overruled the objection. H2Eco itself then elicited the same kind of testimony from Tessier on cross examination. Specifically, the following exchange took place on cross examination:

Q. You could have sprayed the hose on the walls of the pool to prevent it from drying out, couldn't you have?

A. No, you have to let it dry to a certain point. It's still wet whenever we first initially install it. But the weight of the water is what holds it in place and keeps it from cracking, so that's why you have to fill it so fast.

Q. Sorry, and I apologize if I talk over you. It's hard to hear the pauses and stops. If I do interrupt you, I apologize. So, if I'm understanding correctly, there's a point where after you finish the plaster, it needs to dry, but then once that period has passed, then you do need to keep it wet to prevent it from drying out. Is that a fair statement?

A. It takes one year for the plaster to cure under water, so the weight of the water holds the plaster in place. Whenever it gets too hot, there are pockets that develop behind it, and that's what causes it to crack.

Q. So what you're saying is heat is what's causing it to crack, in short?

A. Well, the lack of the water and the weight pull the air out of it.

H2Eco went on to elicit further testimony from Tessier regarding the type of plaster used, whether the Brinkmeyers could have avoided cracking by spraying the sides of the pool with water, and whether accelerants could have been used to affect cure time. Thus, H2Eco elicited the evidence of causation necessary to support the verdict.

Given that the timing of delivery was a critical part of the agreement with H2Eco for the very reason that cracking could occur, given the temporal proximity between the failure of the water delivery and the cracking and the fact that no cracking occurred where the plaster was covered with water, and given Louis Tessier's testimony as to how and why cracking occurs, we hold the evidence is sufficient to support their verdict. H2Eco's point of error on causation is overruled.

**Breach of Contract**

H2Eco contends the Brinkmeyers' breach of contract claim should not have been submitted to the jury. H2Eco also argues the trial court erred by submitting to the jury the issue of whether the emailed terms and conditions constituted part of the contract. Third, H2Eco argues the breach of contract claim fails because it does not satisfy the statute of frauds.

### A. Submission of Breach of Contract Claim to the Jury

On appeal, H2Eco first argues the Brinkmeyers' breach of contract claim should not have been submitted to the jury because, as a matter of law, the contract at issue is one for goods not services and the appropriate theory of recovery was therefore breach of warranty under the UCC instead of breach of contract. H2Eco argues the trial court erred by denying its motion for directed verdict on the breach of contract claim and by charging the jury on an improper theory of recovery. But, H2Eco waived its argument relating to the denial of its motion for directed verdict because it presented evidence after the trial court denied its motion and then failed to reurge its motion for directed verdict at the close of the case. *See Ratsavong v. Menevilay,* 176 S.W.3d 661, 667 (Tex. App.—El Paso 2005, no pet.); *1986 Dodge 150 Pickup v. State*, 129 S.W.3d 180, 183 (Tex. App.—Texarkana 2004, no pet.). "Texas law is well settled that a defendant who moves for a directed verdict after the plaintiff rests, but thereafter elects not to stand on its motion for instructed verdict, and proceeds with her own case, waives her motion for directed verdict unless the motion is reurged at the close of her case." *Ratsavong*, 176 S.W.3d at 667. Furthermore, H2Eco failed to object to the issue being submitted to the jury, specifically stating to the court that it had no objections to the jury charge. *See* TEX. R. CIV. P. 272, 274; *Woodard v. McDonalds' Corp.*, No. 01-17-00204-CV, 2018 WL 1161564, at *1 (Tex. App.—Houston [1st Dist.] Mar. 6, 2018, pet. denied) (holding jury charge complaint waived because "when a party represents to the trial court that she has no objection to the charge, any error is waived."); *Saeco Elec. & Util., Ltd. v. Gonzales*, 392 S.W.3d 803, 808 (Tex. App.—San Antonio 2012), pet. granted, judgm't vacated w.r.m., No. 12-0961, 2013 WL 12501849 (Tex. July 5, 2013) (complaint on appeal "that the wrong theory of liability was submitted to the jury" was waived by failure to object to jury charge at trial).

Even if H2Eco had not waived its argument that breach of contract was the wrong theory of recovery, we would not find it persuasive. "When, as here, a contract contains a mixture of goods and services, a determination of which law, the UCC or case law, governs the contract as a whole depends on whether the agreement is 'predominantly' for the supply of goods or 'predominantly' for services." *Frank's Intern., Inc. v. Smith Intern., Inc.*, 249 S.W.3d 557, 564 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (quoting *Cont'l Casing Corp. v. Siderca Corp.*, 38 S.W.3d 782, 787 (Tex. App.—Houston [14th Dist.] 2001, no pet.); *see also Sw. Bell Tel. Co. v. FDP Corp.*, 811 S.W.2d 572, 574 (Tex.1991).[4] If the contract is "predominantly a service transaction, not a sale of goods, the warranty provisions of Article Two of the Uniform Commercial Code [] do not explicitly govern this case." *Sw. Bell*, 811 S.W.2d at 574 (citing TEX. BUS. & COM. CODE § 2.102); *see id.* at 576 (holding contract for Yellow Pages ad was mix of goods and services but primarily for services, so plaintiff could sue on either breach of contract or breach of common law express warranty.).

The evidence at trial showed the contract was primarily for the *service* of transporting and pumping the water into the pool within the necessary timeframe, not simply for the water as a *good*, making breach of contract the appropriate theory of recovery. *See Sw. Bell*, 811 S.W.2d at 574. At trial, Susan Tessier testified she called H2Eco before the Brinkmeyers to ensure H2Eco understood that this was not simply a request for water, and that if it did not deliver the water in a timely manner the plaster job would be ruined. Mrs. Brinkmeyer testified when she spoke with an H2Eco employee by phone, she asked the employee to confirm it would perform the pool water service on a specific date by a specific time, and the employee confirmed it would do so, reassuring Mrs. Brinkmeyer that H2Eco is "used to doing that." Furthermore, the Brinkmeyers did not allege

---

[4] "The UCC does not govern a contract for services; rather, such a contract is governed by case law." *Frank's Intern.*, 249 S.W.3d at 564.

at trial that H2Eco breached the contract because there was anything wrong with the water itself. Instead, they alleged H2Eco agreed to perform a service within a specific time window, and H2Eco breached the contract by showing up a day late and thereby failing to perform the service as promised.

Because the trial evidence was legally sufficient to support the Brinkmeyers' breach of contract claim, the trial court did not err by denying H2Eco's motion for directed verdict, and the trial court did not abuse its discretion by submitting the breach of contract claim to the jury rather than breach of warranty. *See Westport Oil & Gas Co., L.P. v. Mecom*, 514 S.W.3d 247, 255 (Tex. App.—San Antonio 2016, no pet.) (motion for directed verdict reviewed under legal sufficiency standard); *In re Estate of McNutt*, No. 04-15-00110-CV, 2016 WL 519732, at *6 (Tex. App.—San Antonio Feb. 10, 2016, pet. denied) (jury charge error reviewed under abuse of discretion standard).

## B. Email Terms and Conditions

H2Eco further argues the trial court should not have submitted the following question to the jury: "Was the agreement subject to the terms and conditions attached to the email dated June 11, 2021, sent at 5:37 titled 'H2eco confirmation'?" H2Eco argues on appeal that, as a matter of law, the emails sent after the phone call with the Brinkmeyers constitute the parties' agreement.

After the trial court denied H2Eco's motion for a directed verdict, H2Eco asked the trial court to hold that, as a matter of law, the email with terms and conditions was the agreement between the parties, rather than the agreement made by phone. The trial court declined to so hold, reiterating that H2Eco's motion for a directed verdict is denied. This exchange occurred after the Brinkmeyers rested and before H2Eco presented its case. And, it was never reurged after the close of evidence. Further, at the jury charge conference, H2Eco did not object to the submission of the

question regarding the terms and conditions to the jury. Thus, for the same reasons as set forth above, H2Eco waived the argument that the trial court should not have submitted to the jury the question of whether the emailed terms and conditions are part of the parties' agreement. *See Woodard*, 2018 WL 1161564, at *1; *Saeco*, 392 S.W.3d at 808; TEX. R. CIV. P. 272, 274.

But, once again, even outside of the preservation of error issue, we find H2Eco's argument that the emailed terms and conditions constitute the parties' agreement as a matter of law unavailing. The issue was factually disputed with the Brinkmeyers testifying that they agreed by phone that H2Eco would provide the pool water delivery service on June 18, 2021, provided their payment information by phone, did not read H2Eco's emails sent after the phone call until after H2Eco delivered the water on June 19, 2021, and never signed any documents. To hold that the trial court should have made the determination in H2Eco's favor as a matter of law we would have to find legally insufficient evidence to support the Brinkmeyers' position and the submission of the evidence to the jury. *See JBS Carriers, Inc. v. Washington*, 564 S.W.3d 830, 841–42 (Tex. 2018) (explaining legal sufficiency standard). But, as just outlined, the evidence supported the submission of the issue to the jury. *See id.*

### C. Statute of Frauds

H2Eco also argues the statute of frauds bars the Brinkmeyers' claim for breach of contract. The statute of frauds is an affirmative defense that "renders a contract that falls within its purview unenforceable." *Dynegy, Inc. v. Yates*, 422 S.W.3d 638, 641 (Tex. 2013) (citing TEX. BUS. & COM. CODE § 26.01(a)). "The party pleading the statute of frauds bears the initial burden of establishing its applicability." *Id.* (citing TEX. R. CIV. P. 94). Whether a contract comes within the statute of frauds is a question of law which we review de novo. *Id.* at 642.

A party waives this affirmative defense if it fails to object to evidence based on the statute of frauds. *Bohls v. Brazelton*, 336 S.W.2d 208, 211 (Tex. Civ. App.—Austin 1960, writ ref'd n.r.e.) (noting that party waives statute of frauds if it fails to timely object on that basis to evidence of an agreement that allegedly violates the statute of frauds); *Texan Pearl, LLC v. Koegel*, No. 03-14-00556-CV, 2015 WL 6119491, at *3 (Tex. App.—Austin Oct. 14, 2015, no pet.) (mem. op.); *S. Plains Lamesa R.R., Ltd. v. The Kitten Family Living Tr.*, No. 07-09-0343-CV, 2011 WL 3903145, at *11 (Tex. App.—Amarillo Sept. 6, 2011, no pet.) (mem. op.) (concluding party waived its right to assert statute of frauds on appeal when it failed to object on that ground to evidence of oral agreement).

H2Eco concedes it did not plead the statute of frauds as an affirmative defense. H2Eco raised the statute of frauds a single time at trial, after the trial court denied its motion for directed verdict. Specifically, H2Eco asked the trial court to stipulate that the email sent following the phone call was the agreement between the parties, arguing that, because the contract was one for goods and therefore subject to the statute of frauds, the Brinkmeyers are required to rely upon the papered form of the agreement—the email. But because H2Eco never objected at trial to any evidence of an oral agreement by phone based on the statute of frauds, H2Eco waived the argument that recovery for breach of contract was barred by the statute of frauds. *Bohls,* 336 S.W.2d at 211.

Even if H2Eco had preserved its statute of frauds argument, we would not find it persuasive. "Where a contract contains a mix of sales and services, the UCC applies if the sale of goods is the 'dominant factor' or 'essence' of the transaction." *Cont'l Casing Corp. v. Siderca Corp.,* 38 S.W.3d 782, 787 (Tex. App.—Houston [14th Dist.] 2001, no pet.) (citing *WesTech Eng'g, Inc. v. Clearwater Constructors, Inc.*, 835 S.W.2d 190, 197 (Tex. App.—Austin 1992, no writ). As set forth above, we recognize the service aspect of this transaction was the critical issue for the

Brinkmeyers and, therefore, the essence of the agreement between the parties, not a sale of goods. *See id.* In addition, two exceptions to the statute of frauds apply here: H2Eco admitted to the trial court that it had a contract with the Brinkmeyers, and H2Eco accepted the payment the Brinkmeyers made. TEX. BUS. & COM. CODE § 2.201(c) (stating a "contract which does not satisfy the requirements of Subsection (a) but which is valid in other respects is enforceable" if "the party against whom enforcement is sought admits in his pleading, testimony or otherwise in court that a contract for sale was made" or if payment has been "made and accepted"). We overrule H2Eco's issue regarding the statute of frauds.

### DTPA and Fraudulent-Inducement Claims

H2Eco also complains that the trial court rejected its motion for a directed verdict as to the Brinkmeyers' DTPA and fraudulent-inducement claims, asserting there is no evidence that H2Eco acted knowingly or intentionally.[5] The jury found H2Eco fraudulently induced the Brinkmeyers to enter the agreement. Regarding the DTPA claim, the jury found H2Eco engaged in a false, misleading, or deceptive act or practice, but did not do so knowingly.[6]

Under the same reasoning as above, H2Eco waived its arguments on appeal that a directed verdict should have been granted as to the Brinkmeyers' DTPA and fraudulent-inducement claims because H2Eco presented evidence after the trial court denied its motion for directed verdict on

---

[5] We review a trial court's denial of a motion for directed verdict under a legal sufficiency standard. *See Westport Oil & Gas Co., L.P. v. Mecom*, 514 S.W.3d 247, 255 (Tex. App.—San Antonio 2016, no pet.). "Evidence is legally insufficient to support a jury finding when (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact." *JBS Carriers, Inc. v. Washington*, 564 S.W.3d 830, 841 (Tex. 2018) (quoting *Gunn v. McCoy*, 554 S.W.3d 645, 658 (Tex. 2018)). "We must consider all of the evidence 'in the light most favorable to the party in whose favor the verdict has been rendered,' and 'every reasonable inference deducible from the evidence is to be indulged in that party's favor.'" *Id.* at 841–42 (quoting *Gunn*, 554 S.W.3d at 658). "If the evidence offered to prove a vital fact's existence is 'so weak as to do no more than create a mere surmise or suspicion,' the record contains less than a scintilla." *Id.* at 842 (quoting *Gunn*, 554 S.W.3d at 658).

[6] The jury also found that H2Eco did not commit fraud, and no damages were awarded based on fraud.

the DTPA and fraudulent-inducement claims and because H2Eco failed to reurge its motion for directed verdict on these claims at the close of the case. *See Ratsavong*, 176 S.W.3d at 667;*1986 Dodge 150 Pickup*, 129 S.W.3d at 183. But, even if H2Eco had not waived these arguments, for the reasons stated below they are unavailing.

### A. DTPA

A finding of knowing or intentional conduct is not required for an award of damages under the DTPA. TEX. BUS. & COM. CODE § 17.50. Instead, such a finding simply entitles the jury to award additional damages based on the DTPA violations. *See Loya Ins. Co. v. Avalos*, 610 S.W.3d 878, 884 (Tex. 2020) (citing TEX. BUS. & COM. CODE § 17.50(b), (d)). To prevail on a DTPA claim, a claimant must instead show the defendant engaged in a false, misleading, or deceptive act that the consumer relied on to his detriment and that was a producing cause of damages. *See* TEX. BUS. & COM. CODE §§ 17.41–.63; *Amstadt v. United States Brass Corp.*, 919 S.W.2d 644, 649 (Tex. 1996); *Williamson v. Howard*, 554 S.W.3d 59, 70 (Tex. App.—El Paso 2018, no pet.); *Garza v. Garza*, No. 04-11-00310-CV, 2013 WL 749727, at *7 (Tex. App.—San Antonio Feb. 27, 2013, no pet.) (mem. op.); *Hunt v. City of Diboll*, 574 S.W.3d 406, 431 (Tex. App.—Tyler 2017, pet. denied). The jury's finding that H2Eco did not knowingly violate the DTPA does not render the evidence legally insufficient to support its findings that H2Eco met all the elements of the Brinkmeyers' DTPA claim. Therefore, H2Eco's motion for a directed verdict was properly denied and the jury's failure to find that H2Eco acted knowingly has no effect on the Brinkmeyers' ability to recover for a DTPA violation. *See Westport Oil & Gas Co., L.P.*, 514 S.W.3d 247, 255 (Tex. App.—San Antonio 2016, no pet.).

### B. Fraudulent Inducement

"Fraudulent inducement is a 'species of common-law fraud' that 'arises only in the context of a contract.'" *Int'l Bus. Machines Corp. v. Lufkin Indus., LLC*, 573 S.W.3d 224, 228 (Tex. 2019) (quoting *Anderson v. Durant*, 550 S.W.3d 605, 614 (Tex. 2018)). A fraudulent-inducement claim "requires proof that: (1) the defendant made a material misrepresentation; (2) the defendant knew at the time that the representation was false or lacked knowledge of its truth; (3) the defendant intended that the plaintiff should rely or act on the misrepresentation; (4) the plaintiff relied on the misrepresentation; and (5) the plaintiff's reliance on the misrepresentation caused injury." *Id.* Misrepresentation occurs if "the defendant falsely promises to perform a future act while having no present intent to perform it." *Id.* Because "intent to defraud is not usually susceptible to direct proof," a party can support a claim for fraudulent inducement where there is evidence of "breach combined with 'slight circumstantial evidence' of fraud." *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 305 (Tex. 2006) (quoting *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 435 (Tex. 1986)).

As a preliminary matter, the jury's finding on the DTPA claim that H2Eco did not knowingly engage in a false, misleading, or deceptive act or practice does not negate any element of the Brinkmeyers' fraudulent-inducement claim. *See Lufkin Indus.*, 573 S.W.3d at 228 (stating plaintiff must show "the defendant knew at the time that the representation was false *or lacked knowledge of its truth*" and "the defendant falsely promise[d] to perform a future act while having *no present intent* to perform it.") (emphasis added). Further, the evidence in support of the jury's fraudulent-inducement finding includes H2Eco's emails sent to the Brinkmeyers after the phone conversation, in which H2Eco stated it does not guarantee delivery times, attempting to reserve its ability to not perform as promised by phone. Further, H2Eco's employee testified that it was

H2Eco's policy not to guarantee delivery times, even though Susan Tessier and the Brinkmeyers testified H2Eco did so over the phone. Specifically, H2Eco's employee testified that the agreement to deliver on a date certain was meaningless given H2Eco had a policy of not guaranteeing time of delivery, and that H2Eco only focuses on delivering within twenty-four hours of the promised date.

Considering this evidence in the light most favorable to the Brinkmeyers, we hold the evidence is legally sufficient to support that H2Eco "knew at the time that the representation was false or lacked knowledge of its truth" and "falsely promise[d] to perform a future act while having no present intent to perform it." *See id.*; *JBS Carriers, Inc. v. Washington*, 564 S.W.3d 830, 841 (Tex. 2018) (explaining legal sufficiency standard). Therefore, there is legally sufficient evidence to support the jury submission and finding of fraudulent-inducement. *See Mecom*, 514 S.W.3d at 255.

**Damages**

Finally, H2Eco challenges the trial court's award of damages. The jury awarded past and future damages separately under theories of breach of contract, fraudulent inducement, and DTPA violations. In its opening brief, H2Eco argues the damages awarded constituted a double or triple recovery because the Brinkmeyers failed to elect a single remedy. The Brinkmeyers contend H2Eco waived that issue by not objecting below. But, H2Eco also argues the evidence was factually and legally insufficient to support the damages awarded.

### A. Double or Triple Recovery

A party can seek damages based on alternative theories, "but it is not entitled to a double recovery." *PMC Chase, LLP v. Branch Structural Sols., Inc.*, No. 05-18-01383-CV, 2020 WL 467791, at *6 (Tex. App.—Dallas Jan. 28, 2020, pet. denied) (citing *Waite Hill Servs., Inc. v. World*

*Class Metal Works, Inc.*, 959 S.W.2d 182, 184 (Tex. 1998) (per curiam)). If a party obtains favorable findings on alternate theories, "it is entitled to judgment on the theory that provides the greatest or most favorable relief." *Id.* If the prevailing party fails to elect between alternative measures of damages, "the trial court should utilize the findings affording the greater recovery and render judgment accordingly." *Id.* (citing *Boyce Iron Works, Inc. v. Sw. Bell Tel. Co.*, 747 S.W.2d 785, 787 (Tex. 1988)).

Here, the Brinkmeyers sought damages based on breach of contract, fraudulent inducement, and DTPA violations, and the jury found the following damages for each claim: $15,400 for breach of contract, $35,000 for fraudulent inducement, and $35,000 for DTPA, totaling $85,400 in damages. The trial court's final judgment awarded $51,800 in actual damages.[7] The jury charge and the jury's findings demonstrate that all damages for all claims were awarded specifically for the costs to repair the Brinkmeyers' pool.[8] Since the final judgment award of $51,800 in actual damages exceeds the damages the jury awarded for any one of the three individual claims, H2Eco argues in its appellant's brief that the trial court aggregated the recoveries, meaning the Brinkmeyers obtained a double or triple recovery for a single injury.

However, because H2Eco failed to argue at trial or in any post-judgment motions that the Brinkmeyers improperly obtained a double or triple recovery rather than elect a single remedy, H2Eco failed to preserve this argument. *See id.* ("An objection regarding failure to elect a remedy

---

[7] The record does not show the method the trial court used to arrive at its final judgment of $51,800 in actual damages. The Brinkmeyers' letter following oral argument provides only speculation regarding this calculation. The jury was asked the following question regarding proportionate responsibility: "For each person you found caused or contributed to cause the occurrence, find the percentage of negligence attributable to each." The jury found the Brinkmeyers were 30 percent responsible. However, the Brinkmeyers do not bring any negligence claims against H2Eco, and it is unclear whether the trial court reduced the jury's damages based on this finding of proportionate responsibility or what method the trial court may have used to so reduce the damages.

[8] For both the fraudulent-inducement and DTPA claims, the jury found zero damages for lost time and mental anguish. For these two claims, the jury awarded only past and future damages for expenses to repair the pool. Likewise, for the breach of contract claim, the jury awarded only past and future remedial damages for the costs to repair the pool.

must be asserted in the trial court to preserve that complaint for appellate review."); *Jang Won Cho v. Kun Sik Kim*, 572 S.W.3d 783, 805 (Tex. App.—Houston [14th Dist.] 2019, no pet.) ("An objection asserting that the plaintiff failed to elect its remedy preserves a double recovery complaint for appellate review."); *Waite Hill Services*, 959 S.W.2d at 184 (defendant preserved error by asking trial court to require plaintiff elect its remedy); *D/FW Commercial Roofing Co., Inc. v. Mehra*, 854 S.W.2d 182, 189 (Tex. App.—Dallas 1993, no writ) (holding challenge to sufficiency of the evidence did not preserve error to challenge double recovery because it "did not alert the trial court that it was complaining about the possibility of a double recovery"). Furthermore, at oral argument and in its letter to the court thereafter, H2Eco explicitly abandons the argument made in its opening brief relating to the failure of the plaintiff to elect its remedy. For these reasons, we decline to rule on the issue of whether the trial court erred in not having the Brinkmeyers elect their theory of recovery.

### B. Sufficiency of the Evidence

Instead, H2Eco now relies on its argument that the damages awarded are not supported by legally or factually sufficient evidence. To preserve an issue for appeal, a complaint must be made to the trial court "by a timely request, objection, or motion" that "stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context." TEX. R. APP. P. 33.1. "An objection must be clear enough to afford the trial court an opportunity to correct the alleged error." *Arkoma Basin Expl. Co. v. FMF Assocs. 1990-A, Ltd.*, 249 S.W.3d 380, 387 (Tex. 2008). But we should review objections "liberally so that the right to appeal is not lost unnecessarily." *Id.* at 388.

Here, H2Eco asserted in its post-judgment motions that there was legally and factually insufficient evidence to support the damages awarded. Specifically, H2Eco set forth in its motion for new trial that "[t]The Final Judgment awards the Brinkmeyers '51,800.00' for what it describes as 'actual damages,' however these findings on damages is [sic] not supported by legally or factually sufficient evidence, is grossly excessive, and should be set aside (or at least substantially remitted)." Further, H2Eco stated in its motion for new trial that there is legally and factually insufficient evidence to support the jury's findings. Likewise, in its motion to disregard jury answers and motion for judgment notwithstanding the verdict, H2Eco asserted the jury's damages findings are based on legally and factually insufficient evidence. Finally, in its opening briefing to this court, H2Eco asserts there is legally and factually insufficient evidence to support the damages awarded because the damages awarded are grossly excessive, and because the Brinkmeyers did not pay for any repairs to their pool prior to trial, so the evidence did not support the $44,900.00 in total past damages awarded by the jury. And, in its reply brief, H2Eco further asserts the evidence at trial supported at most $22,900.00 in future damages, but the jury's findings, when aggregated, awarded $40,500.00 in total future damages. H2Eco further argues in its reply that the final judgment of $51,800 in actual damages is so against the great weight and preponderance of the evidence as to be manifestly unjust. In its letter following oral argument, H2Eco asserts the damages claimed by the Brinkmeyers were solely for the costs of repairing the pool, but the amount of past damages awarded by the jury exceeded the repair costs supported by the evidence. As well, H2Eco asserts the amount of future damages awarded by the jury also exceeded the repair costs supported by the evidence.

Construing H2Eco's objections in its post-trial motions and on appeal liberally so that H2Eco's "right to appeal is not lost unnecessarily," we will not consider the sufficiency of the trial

court's aggregate award because H2Eco failed to preserve the issue of double or triple recovery, but we will consider whether the individual damages findings by the jury are supported by legally and factually sufficient evidence. *See Arkoma*, 249 S.W.3d at 387; *Adams v. Starside Custom Builders, LLC*, 547 S.W.3d 890, 896–97 (Tex. 2018) ("Rules of error preservation should not be applied so strictly as to unduly restrain appellate courts from reaching the merits of a case."); *Greene v. Farmers Ins. Exchange*, 446 S.W.3d 761, 764 n.4 (Tex. 2014) ("We do not consider *issues* that were not raised in the courts below, but parties are free to construct new *arguments* in support of issues properly before the Court."); *Marino v. King*, 355 S.W.3d 629, 634 (Tex. 2011) ("Constitutional imperatives favor the determination of cases on their merits rather than on harmless procedural defaults.").

"In evaluating legal sufficiency, we are required to determine whether the proffered evidence as a whole rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Signature Indus. Services, LLC v. Int'l Paper Co.*, 638 S.W.3d 179, 187 (Tex. 2022) (quoting *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 25 (Tex. 1994)) (internal quotation marks omitted). We must "view the evidence in the light favorable to the verdict, crediting favorable evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *Id.* (quoting *City of Keller v. Wilson*, 168 S.W.3d 802, 807 (Tex. 2005) (internal quotation marks omitted). We will sustain a legal-sufficiency challenge if the record shows: (1) the complete absence of evidence of a vital fact; (2) the court is barred by the rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact. *Keller*, 168 S.W.3d at 810.

Damages are financial compensation for loss or injury. *In re Xerox Corp.*, 555 S.W.3d 518, 529 (Tex. 2018). "'Damages' compensate for loss—actual or reasonably estimable—and no more." *Id.* "[T] he role of actual damages is to place the plaintiff in his *rightful* position, not the position he *wishes* to acquire." *J & D Towing, LLC v. Am. Alternative Ins. Corp.*, 478 S.W.3d 649, 677 (Tex. 2016). "Reasonable and proper compensation must be neither meager nor excessive, but must be sufficient to place the plaintiff in the position in which he [or she] would have been absent the defendant's tortious act. In this way, compensation through actual-damages awards functions as an instrument of corrective justice, an effort to put the plaintiff in his or her rightful position." *In re Cent. Oregon Truck Co., Inc.*, 644 S.W.3d 668, 670 (Tex. 2022) (quoting *J & D Towing,* 478 S.W.3d at 655) (internal quotation marks omitted).[9]

Here, the issue is whether the Brinkmeyers provided legally sufficient evidence of the damages awarded for repair of their pool. *See ERI Consulting Engineers, Inc. v. Swinnea*, 318 S.W.3d 867, 876 (Tex. 2010). The damages amount "must be shown by competent evidence with reasonable certainty," which is a "fact intensive determination." *Id.* (quoting *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 84 (Tex. 1992)) (internal quotation marks omitted).

At trial, the Brinkmeyers presented two estimates as evidence of the costs to repair the pool. First, the proposal from Varsity Patios & Pools estimates the total cost to remove the plaster and remodel the pool would be $22,900, not including the costs for another company to deliver the water, which Mr. Brinkmeyer testified at trial would roughly cost an additional $2,000. Second, in 2022 Pinch a Penny Pool Patio Spa estimated the cost to remove the plaster and remodel the

---

[9] The Texas Supreme Court has also referred to Black's Law Dictionary to clarify the meaning of "compensatory damages," noting the term is defined as "damages sufficient in amount to indemnify the injured person for the loss suffered," and the dictionary notes that the term is interchangeable with "actual damages," which is defined as "[a]n amount awarded to a complainant to compensate for a proven injury or loss; damages that repay actual losses." *In re Nalle Plastics Family Ltd. P'ship*, 406 S.W.3d 168, 171–72 (Tex. 2013) (citing *Black's Law Dictionary* 445 (9th ed. 2009) (internal quotation marks omitted)).

pool would be $17,787.60, and $2,000.00 for the water delivery, totaling $19,787.60. At trial, Mr.

Brinkmeyer explained that Pinch a Penny came out to his home again and gave an updated bid of

$22,000 total for removing the plaster, remodeling the pool, and filling the pool up with water.

The jury found the following damages:

- Breach of contract: $14,900 in remedial damages sustained in the past, and $500 in remedial damages that, in reasonable probability, will be sustained in the future (totaling $15,400);
- Fraudulent inducement: $15,000 in expenses sustained in the past, and $20,000 in expenses that in a reasonable probability will be sustained in the future (totaling $35,000); and
- DTPA: $15,000 in expenses sustained in the past, and $20,000 in expenses that in reasonable probability will be sustained in the future (totaling $35,000).

But notably, in addition to the bids to repair the plaster in the future, the Brinkmeyers testified that

their initial plaster job cost slightly over $12,000 plus the almost $2,000 for the cost of water

delivery. Thus, it seems the jury awarded to the Brinkmeyers, under the theories of DTPA and

fraudulent inducement, both the past cost of the initial plaster job that gave rise to this lawsuit and

the future cost of repairing it.

Such an award constitutes a windfall for the Brinkmeyers. *See In re Sw. Pub. Serv. Co.*, No.

13-19-00111-CV, 2020 WL 1887762, at *27 (Tex. App.—Corpus Christi–Edinburg Apr. 16, 2020,

no pet.) (stating actual damages "should compensate the injured party for its loss, not penalize the

wrongdoer or allow the plaintiff a windfall.") (citing *Torrington Co. v. Stutzman*, 46 S.W.3d 829,

848–49 (Tex. 2000)). The jury's actual damages award does more than "place the [Brinkmeyers]

in the position in which [they] would have been absent the defendant's tortious act." *J & D Towing*,

478 S.W.3d at 677. The jury's award, in essence, gives the Brinkmeyers a newly plastered pool at

no cost, compensating them for both the initial work, which they would have paid for regardless,

and the future repair work. *See id.* Put another way, there is not legally sufficient evidence to

support a recovery of repair damages in both the past and present under either DTPA or fraudulent inducement.

While the Brinkmeyers' recovery under the theory of breach of contract does not suffer the same issue, we cannot simply affirm the damages awarded for breach of contract, or suggest remittitur for the breach of contract claim. First, by the jury's findings, the Brinkmeyers recovered under several theories and, as such, would be entitled to elect the theory that provided the greatest recovery. *See PMC Chase, LLP*, 2020 WL 467791, at \*6; *Jang Won Cho*, 572 S.W.3d at 805. But, also, the trial court's final judgment seemingly aggregated the jury's damages awards in a way that cannot be untangled. *Cf. Coastal Res., Ltd. v. Los Lazos Const. & Lease Serv., LLC*, No. 04-11-00763-CV, 2013 WL 1760602, at \*8 (Tex. App.—San Antonio Apr. 24, 2013, no pet.) (suggesting remittitur when the specific dollar amount to be remitted was clear from the record); TEX. R. APP. P. 46.3, 46.5 (providing procedures for remittitur).

Therefore, there is legally insufficient evidence to support the damages awarded by the trial court, but there is legally sufficient evidence to support a lesser amount of damages. However, the appropriate lesser amount of damages is not ascertainable by our court. *Cf. Swinnea*, 318 S.W.3d at 877. Generally, if a court of appeals sustains an appellant's legal sufficiency point, "it is the court's duty to render judgment for appellant." *Vista Chevrolet, Inc. v. Lewis*, 709 S.W.2d 176, 176 (Tex. 1986). This principle, which is incorporated into Rule 43.3 of the Texas Rules of Appellate Procedure, is "mandatory and . . . courts of appeals are not at liberty to disregard them." *Bradleys' Elec., Inc. v. Cigna Lloyds Ins. Co.*, 995 S.W.2d 675, 677 (Tex. 1999). "Notwithstanding the general rule, an appellate court has broad discretion to remand for a new trial in the interest of justice, even when rendition would otherwise be appropriate." *Interest of J.M.T.*, 617 S.W.3d 604, 608 (Tex. App.—San Antonio 2020, no pet.) (citing TEX. R. APP. P. 43.3(b); *Dahlberg v. Holden*,

150 Tex. 179, 238 S.W.2d 699, 704 (1951)). "In order to properly exercise that discretion, the court must state it is doing so and the opinion must reflect the basis for the court's action. *Id.* (citing *Nat'l Life & Acc. Ins. Co. v. Blagg*, 438 S.W.2d 905, 910 (Tex. 1969)).

In the interests of justice, we must remand for a new trial rather than render judgment here, because the appropriate amount of damages is not ascertainable by our court. *See* TEX. R. APP. P. 43.3(b); *see also, e.g., Hardin v. Obstretrical & Gynecological Associates, P.A.*, 527 S.W.3d 424, 442, 446 & n.32 (Tex. App.—Houston [1st Dist.] 2017, pet. denied) (reversing and remanding a portion of the case because trial court removed a part of damages plaintiff entitled to recover but liability established); *Rojas v. Duarte*, 393 S.W.3d 837, 846 (Tex. App.—El Paso 2012, pet. denied) (reversing case because legally insufficient evidence to support damage award but remanding case in the interest of justice because liability proved); *In re Estate of McNutt*, 405 S.W.3d 194, 196 (Tex. App.—San Antonio 2013, no pet.) (reversing and remanding "in the interests of justice").

Because "[a]n appellate court may not reverse and remand for a new trial on damages alone when, as here, liability was contested in the trial court," we must remand the entire case for a new trial. *Villarreal v. Timms*, 623 S.W.3d 386, 391 (Tex. App.—San Antonio 2019, no pet.) (citing TEX. R. APP. P. 44.1(b) (prohibiting appellate court from ordering separate trial solely on unliquidated damages if liability is contested)); *see also Estrada v. Dillon*, 44 S.W.3d 558, 562 (Tex. 2001) (per curiam)).

## CONCLUSION

Because the evidence is legally insufficient to support the damages awarded, and in the interests of justice, we reverse the trial court's judgment and remand the matter for a new trial. *See* TEX. R. APP. P. 44.1(b); *Estrada*, 44 S.W.3d at 562; *Villarreal*, 623 S.W.3d at 391.

Lori Massey Brissette, Justice